```
                    UNITED STATES DISTRICT COURT

                FOR THE WESTERN DISTRICT OF TEXAS

                       U.S. MAGISTRATE JUDGE

                          EL PASO DIVISION

UNITED STATES OF AMERICA        )No. EP:17-MJ-4409(1)-MAT

vs.                             )    EP:17-MJ-4456(1)-MAT

ELBA LUZ DOMINGUEZ-PORTILLO     )    EP:17-MJ-4461(1)-MAT
MAYNOR ALONSO CLAUDINO LOPEZ    )
JOSE FRANCIS YANES-MANCIA       )    EP:17-MJ-4462(1)-MAT
NATIVIDAD ZAVALA-ZAVALA         )
BLANCA NIEVE VASQUEZ-HERNANDEZ) )    EP:17-MJ-4499(1)-MAT
_____

                          El Paso, Texas

                         November 1, 2017

                         STATUS CONFERENCE

              Before the Honorable Miguel A. Torres
```

A P P E A R A N C E S:
----------------------
FOR THE GOVERNMENT:

MS. LAURA FRANCO GREGORY
MR. DOUGLAS RENNIE
------------------------
Assistant United States Attorney
700 E. San Antonio
El Paso, Texas 79901


FOR DEFENDANT:
MR. SERGIO GARCIA
--------------------------
700 E. San Antonio, Suite D-401
El Paso, Texas 79901

   Proceedings reported by stenotype.  Transcript produced by computer-aided transcription.

```
1              THE COURT:  Let me call the following cases.  Marshals
2   you don't have to bring the Defendants up.  EP:17-M-4409, the
3   United States of America versus Elba Luz Dominguez-Portillo;
4   EP:17-M-4456, the United States of America versus
5   Maynor Alonso Claudino Lopez; EP:17-M-4461, the United States
6   of America versus Jose Francis Yanes-Mancia; EP:17-M-4462, the
7   United States of America versus Natividad Zavala-Zavala; and
8   EP:17-M-4499, the United States of America versus
9   Blanca Nieve Vasquez-Hernandez.
10     We are here for a status conference I had set.  Let me get
11  announcements, please.
12             MS. GREGORY:  Good afternoon, Your Honor,
13  Laura Franco Gregory and Douglas Rennie for the United States.
14             THE COURT:  Good afternoon.
15             MR. GARCIA:  Good afternoon, Judge, Sergio Garcia on
16  behalf of all of the Defendants.
17             THE COURT:  Well, let me -- I know this is kind of a
18  slightly unusual proceeding.  Let me just let the parties know
19  what is on my mind in these cases.  We have had in the last
20  number of months a number of voluminous 1325 prosecutions or a
21  number of cases involving Central American defendants who are
22  accompanied by minor children or minor siblings at the time
23  that they were coming up.  At least that was the representation
24  that was made to me.  Most of the time I have found out about
25  this during the plea and sentencing hearings in these cases.
```

1    As you are all aware, we set them for one hearing, and it
2 is either a plea or we will set it for trial at some point
3 after that.  At that time, it happened with some frequency in
4 the last few months that the individuals indicate they were
5 accompanied by a minor, they don't know where they are, they
6 have not been made aware of the whereabouts or the well being,
7 and some cases also I will say, and this is all part of the
8 public record where they indicated they were not provided
9 information at the time of their arrest and separation from the
10 minor child.
11    So, I have been troubled by these reports that I am getting
12 from these defendants, and I have asked the CJA counsel that I
13 have appointed in these cases to just assist their clients in
14 trying to get some information from their clients from --
15 sorry, from the Government with regard to -- I have asked CJA
16 to, frankly, take advantage of the fact they have a lawyer that
17 can make phone calls and ask questions for them just to find
18 out.  I would imagine that, and I am always struck when this
19 happens by how anxiety provoking I think it is for these
20 parents who make the representation that this is their child or
21 their sibling in some cases.  So I have taken advantage of the
22 fact they have an appointed lawyer to try to track some of this
23 information down, and some of the reports I get back is the
24 information is very tricky to track down.
25    So the Court has done its own research to look into this

1  situation and some of the legal issues involved, and it is
2  something that is very -- it is a complex issue.  There are --
3  it involves laws and agencies that really I had not been
4  familiar with before this issue.  I think last week really what
5  I thought was when I did some of these cases I really -- I just
6  need to have better information as to -- I need to have better
7  information as to what the applicable laws are in these cases
8  and really how they can be an issue in this Court in terms of
9  the rearraignments, okay?
10      Candidly, and I am telling both parties my concern is with
11  issues impacting the voluntariness of the plea because it
12  involves a situation where at least for the Defendants where
13  they were arrested by the Government that the Government at
14  that time obviously they are not going to place the children in
15  custody with them, and they take them to residential centers
16  that are required by law to meet certain requirements of basic
17  -- at least basic -- what is the word?  I can't think of the
18  right phrase, but that meet certain basic requirements in terms
19  of their care and their well being.  So, what I am concerned
20  about is really just what appears to be the total lack of
21  information that these Defendants appear to be getting.
22      Now, I am not suggesting that this is decisions made by
23  individual agents or by an individual Border Patrol sector here
24  or anything like that or by the Office of Refugee Resettlement,
25  but the bottom line is they are not getting the information,

1  and I am a little bit troubled that by the time of their pleas
2  they don't have this information, and I certainly had
3  communicated in the past sometimes with defendants who say that
4  their whole goal is to reunite with their kids or find
5  something out about their kids. It is an anxiety that looms
6  large.  I don't think there is a lot of reason to doubt the
7  sincerity of those expressions in most cases.
8      Here is what I would like to do.  I am going to ask the
9  parties -- I am going to issue a specific, and it is not going
10 to be a long order, asking the parties to brief some issues
11 that hopefully can answer some of these questions.  I am going
12 to reset this case for a status conference for next week.
13 Thursday is what I am thinking.  I will talk to the parties
14 about that in a second to see what their availability is, but
15 basically, at that point, we can see where we are whether there
16 is a plea at that time or a request for trial or whatever.
17     I just would like to get the parties positions, and this is
18 why we have -- I have taken the individual step of appointing
19 the Office of the Federal Public Defenders in this case.  They
20 are not subject to even some of the limitations that we have
21 with a CJA panel and even in terms of what is authorized
22 specifically in terms of how many hours they can bill, et
23 cetera.  I thought I am not going to get into that jam.  I am
24 going to ask the Public Defender to do this.  I appreciate the
25 Office of the Federal Public Defender assisting us in these

1  cases under these unusual circumstances.

2  Here is what I am getting to in terms of the issues.  I
3  will flush these out a little more and try to finesse them in
4  the order I will put out hopefully by this afternoon or
5  tomorrow morning at the latest.  It is essentially this.

6  The first question is really what are the Government's
7  procedures for providing information to petty misdemeanor
8  defendants at the time of their arrest providing information
9  regarding the well being and the whereabouts of their child?

10  Now, are there statutory -- I don't know what the process
11  is.  I never heard what the process is exactly.  Are there
12  statutory or regulatory procedures that spell out a certain
13  protocol that should be followed with regard to the parents or
14  is there something under the [inaudible] settlement which I am
15  sure the parties may be familiar with with regard to these
16  unaccompanied minor cases?  The [inaudible] settlement spells
17  out many of the requirements for the Office of Refugee
18  Resettlement in handling unaccompanied child issues in lieu of
19  regulations that have not been promulgated.

20  Basically, is there any authority for what information the
21  parents are provided, and my look at this is looking at it
22  really from the side of the parents or the defendants in my
23  Court or who have been in my Court and/or who have active
24  matters in the Court.  That's the first issue.

25  The second issue is does a defendant charged with a petty

1	misdemeanor have any parental rights regarding their children
2	-- sorry, does a defendant charged with a petty misdemeanor
3	immigration offense where they are undocumented, do they have
4	parental rights?  There is just our research, and in my Court
5	here the right to familial association I think the case is
6	Troxler that talks about that under the 14th Amendment.  So,
7	does that -- it has been applied in a number of different
8	contexts and is recognized as a fundamental right.  Does that
9	somehow apply to an undocumented alien 1325 defendant basically
10	is what I am trying to get to.  It is what I would like to find
11	out.
12	    If so, then the next question would be just assuming that
13	right does exist, is any denial of that right, does it raise
14	any issues akin to what was raised in Kentucky versus Padilla
15	which is this kind of collateral consequence type issue that
16	would have a bearing on the guilty plea.
17	    That leads me to my final issue, which is the most
18	important issue, but kind of by necessity it goes at the very
19	end here is do I even have authority to hear any of this?
20	This is coming up to me.  My concerns come up within the
21	context of the Rule 11 guilty plea and the colloquy I have to
22	go through.  I think it is Rule 11(b)(2) that talks about the
23	voluntariness of a plea where we follow certain questions and
24	make sure the plea is purely voluntary and specifically
25	somebody is pleading guilty because they are guilty and for no

```
 1  other reason.  So, my concerns have arisen within that.
 2       It is not just -- basically, that's my feeling has been
 3  that these issues that I am raising kind of falls within my
 4  wheelhouse here because they do come up in Rule 11 pleas.  At
 5  least that's kind of my view.  I could be wrong about that.  I
 6  don't know.  I am asking you all to give me your position on
 7  that.
 8       I know I am asking a lot.  These are just questions that
 9  are coming up a lot.  I'm really concerned about the issue, and
10  so I hope that these are issues that you will be able to
11  address.  I'll spell them out a little more specifically.  I
12  wanted to give you an idea of why are we having this hearing
13  and what is really concerning the Court.  That's pretty much
14  it.  So, I would like the parties to address that if I could.
15       If we reset this for Thursday, I might ask you all to get
16  me something by Wednesday, Wednesday of next week.  Look, this
17  doesn't have to be some [inaudible] monster brief.  Address it.
18  If you give me the top -- if there are cases that apply that
19  two or three cases that are critical on a particular issue,
20  that's it.  I don't want you to feel like I just dropped this
21  basically an appellate brief on you or something by next
22  Wednesday.  I would like to get them addressed, and if there
23  are any other issues we need to take up, I would ask you to let
24  me know.
25       Is there anything else the parties want to bring up at this
```

1  time?  I will start with the Government.
2           MS. GREGORY:  No, Your Honor.  We will receive the
3  order --
4           THE COURT:  Yes. It is really these four issues.  We
5  are -- I didn't want to come out here essentially empty handed
6  and say I have concerns, wait for my order and we will see you
7  next week.  We will spell those out and have something out,
8  looking at the time, it will probably be first thing tomorrow
9  morning you will have something.
10     Mr. Garcia, anything you wanted to raise, sir?
11          MR. GARCIA:  Yes, sir, actually I do.
12     Last week I was appointed to this case.  My boss called me
13  to her office, and she said I want you to tackle that issue.
14          THE COURT:  Okay.
15          MR. GARCIA:  I went and I did research.
16          THE COURT:  Okay.
17          MR. GARCIA:  As you know, these cases basically have
18  the same issue.  They are all 1325s and all misdemeanor cases,
19  and I am ready to file a motion.  In fact, I will wait for your
20  order, but I was ready to file it by this Friday.  But because
21  all these Defendants are similarly situated and taking into
22  account notions of judicial economy, I was going to ask
23  permission from the Court to see if solely for purposes of this
24  motion or the brief that we file if I could solely for that,
25  for that pretrial motion, could I consolidate the Defendants so

1   I file one motion instead of five repetitive motions, one for
2   each one?
3           THE COURT:  Or one brief instead of --
4           MR. GARCIA:  One brief.
5           THE COURT:  I doubt the Government would have an issue
6   with that.  I will let you file a motion, and we'll see what
7   the Government responds to it.  It sounds like a kind of more
8   efficient way to approach.
9           MS. GREGORY:  The Government has no objection to that.
10  However, the only concern is the Government is hearing about
11  these issues today.  It appears Defense counsel had notice of
12  this before today's hearing.  The Government would ask for the
13  seven days plus it appears you might perhaps raise other issues
14  in your motion pertaining to these particular Defendants.  That
15  might cause the Government to need additional time to respond.
16          MR. GARCIA:  Just for the record, the only thing I
17  knew is there were five misdemeanors and there were five
18  Defendants, and the reason I know this is because I have a
19  friend who clerks in the Ninth Circuit.  He informed me they
20  were similar.  Nobody gave me extra info.  It is how I know,
21  and it is why I went with the research.
22      I am not opposing the seven day time limit that Judge might
23  give us.  I will wait until --
24          MS. GREGORY:  I suppose the Government will have to
25  wait for the Defendants brief if it will include facts

```
 1   pertinent to each of these particular Defendants.
 2             THE COURT:  I see what you are saying.
 3             MS. GREGORY:  I don't know what you're going to file.
 4   As a result of it, we would need to respond to whatever motion
 5   you anticipate on filing.
 6             THE COURT:  Sure.  Let me think about this for one
 7   second.  I do want to put this on the record, again, because
 8   this is a different proceeding than the way we ordinarily
 9   handle these 1325s.
10      I reached out to each party individually just to inform
11   them of what the issue was related to these unaccompanied
12   minors.  As to each, there was no discussion of individual
13   cases.
14             MS. GREGORY:  The Government does not make that --
15             THE COURT:  Or anything like that.  I wanted to be
16   clear about that.  I didn't want to give, and I reached out to
17   the United States Attorney's Office, and I reached out to your
18   office just to say it is related to this issue, there may be
19   some briefing involved, and that pretty much concluded that.
20      Now, let's think about this issue for a second.  These are
21   basically -- you raised a really good point.  I don't want to
22   put you in a disadvantage where he will talk about the facts
23   specific to each individual case and you have to respond to
24   that because it is specific to particular cases.  If that were
25   the case, it would be a more traditional situation where you
```

```
 1  file a motion and the Government responds to the motion.  I
 2  need to think about this for a moment.
 3       Basically, I really want to focus on the legal issues
 4  because I will say this, and just bear with me for a moment,
 5  Mr. Garcia.
 6            MR. GARCIA:  Sure.
 7            THE COURT:  What I did, and the reason I know these
 8  Defendants were accompanied by a minor was during the initials
 9  when I was on duty last week one of my last questions was are
10  any of you accompanied by a minor child or -- I, at that point,
11  took information and just asked I believe in all of the cases
12  just I think I asked them and I said discuss it with your
13  attorney.  That's when I made the decision to appoint the
14  Federal Defenders on the case.
15       In terms of -- I mean, the similarity in each of the facts
16  is that they each represented to me at the initial that yes, I
17  was accompanied by a minor.  I think I asked in all of the
18  cases don't tell me anything except the age and gender of the
19  minor that accompanied you and whether it was a son or daughter
20  or something like that.  We have those basic facts which, quite
21  frankly, is pretty much enough for you all to proceed with
22  these issues.  I don't know that it needs to be a kind of
23  motion and response type situation.
24            MR. GARCIA:  Judge, if I may?  What I was suggesting,
25  is no.  The facts are pretty straightforward, and the facts are
```

1   not really what impacts the case.  It is the law that you just
2   mentioned that has the impact on the cases, the issues that you
3   just talked about.  Those are the issues that I was thinking.
4   A more efficient way for me to address those issues is wait for
5   your order and address precisely those issues in a motion,
6   consolidated motion, and basically a motion to dismiss, but it
7   would be incorporating everything you just talked about because
8   everything you just talked about is relevant to the disposition
9   of this case.
10          THE COURT:  I see what you are saying.  So, now it
11  gets us to what you are talking about.  Well, I think what we
12  could do then is in anticipation of a motion, this will
13  protract the matter somewhat.  Obviously, I am sure you are
14  aware of that, and I imagine you discussed that with your
15  clients.
16          MR. GARCIA:  Yes.  It is how I found out about the
17  specific situation.  When I was appointed, I quickly went to
18  see them and it is how I --
19          THE COURT:  Sure.  Look, we want to do this right, and
20  if we give you some time to file your motion, and give you some
21  time to respond to it, nobody is really behind the eight ball
22  and can address the issues with sufficient time.
23     What do you anticipate in terms of addressing these issues
24  then?  You indicated your intention is to file a motion that
25  these are dismissed and want the Government to respond?  When

```
 1   would you anticipate filing that?
 2            MR. GARCIA:  Well, I am ready to file it Friday, but
 3   if we could wait for your order, then I will make sure, and I
 4   think I will incorporate every matter you talked about.  I can
 5   file it next week like you suggested, seven days, and give the
 6   Government an opportunity to respond.  I will tell you it is a
 7   very complex issue.
 8            THE COURT:  I know it is.
 9            MR. GARCIA:  And that it implicates constitutional
10   amendments.
11            THE COURT:  Well, if we -- what do you think,
12   Ms. Gregory?
13            MS. GREGORY:  We are in an awkward possession.  We are
14   waiting for the Court's order to brief certain issues, but
15   Defense counsel is going to file a motion to dismiss in
16   response to the Court's inquiry on briefing issues.
17       What I would ask then if it appears that it is not merely a
18   brief to the Court, it is going to now turn into a motion to
19   dismiss which the Government would ask for under the local
20   rules the amount of time to respond.
21            THE COURT:  Whatever standard time you're entitled to,
22   no problem.  I mean -- I think that's what we will do.  That's
23   what would be fair.  My goal was just to get some answers on
24   law, but it is becoming an issue where I actually need -- where
25   it is going to be more than briefing.  If it will be motion, we
```

1  will follow whatever standard deadlines.
2      I will ask you because you indicated you were close to
3  filing something anyway.  I would say how about to not put it
4  out too long, maybe Tuesday of next week?
5          MR. GARCIA:  You got it.
6          THE COURT:  If we do Tuesday, and you will have your
7  time to respond after that, and then we will take up --
8          MR. GARCIA:  Just to make sure I cover everything
9  which I think I already did.  If you can still produce your
10 order, Judge, giving us the points you want us to cover?
11         THE COURT:  Sure.
12         MR. GARCIA:  Then I will double check.  I am pretty
13 sure I will cover that.
14         THE COURT:  I am sure you will make some reference in
15 your motion incorporating this request, and we will handle it
16 like that.
17         MR. GARCIA:  Yes.
18         THE COURT:  Is there anything else you wanted to bring
19 up right now, anything?
20         MR. GARCIA:  No, Judge, thank you.
21         THE COURT:  I appreciate it.  I know it is a lot I am
22 asking both sides to do, but it is really an issue very
23 important.
24         MS. GREGORY:  Fascinating.
25         THE COURT:  It is an interesting legal issue, and it

1    is complicated.  It deals with statutes and other things.
2        I will tell you, again, keep in mind the last issue I
3    brought up, which is kind of the main issue, is this something
4    that I can even consider?  The only way that whole issue in my
5    view can make its way into what we do in these misdemeanor
6    cases or under Rule 11 and under the findings of fact I need to
7    make for a Rule 11 colloquy so ultimately that is the
8    fundamental kind of issue.  Is it something I should even be
9    considering?  If I have no authority, I have no authority and
10   that's that.  If I do, we will take it up at that point.
11   That's really a central issue.
12             MR. GARCIA:  Thanks, Judge.
13             THE COURT:  I appreciate everybody's patience.  I
14   really, really apologize about the mix up with regard to we do
15   some different things on the notice, and we had originally the
16   original lawyers appointed, and then we appointed the
17   Federal Defenders.  I thought it would take care of some of
18   these issues.  I know it triggers with you all discovery issues
19   and everything else right away so I really do apologize.
20   That's on me.
21       Very well, thank you, we are in recess.
22             MR. GARCIA:  Thank you, Judge.
23
24                           * * * * *
25

```
 1                         CERTIFICATION
                           _____
 2

 3       I certify that the foregoing is a correct transcript from
 4   the record of proceedings in the above-entitled matter.  I
 5   further certify that the transcript fees and format comply with
 6   those prescribed by the Court and the Judicial Conference of
 7   the United States.
 8
 9   Date:   January 17, 2018
10                                       /s/ Walter A. Chiriboga, Jr.
                                         _____
11                                       Walter A. Chiriboga, Jr.
```