# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### EL PASO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff-Appellee, | § | |
| | § | |
| v. | § | No. EP:17-CR-02660-KC |
| | § | |
| BLANCA NIEVE VASQUEZ- | § | Consolidated Case Nos. |
| HERNANDEZ, ELBA LUZ | § | EP:17-CR-02661-KC |
| DOMINGUEZ-PORTILLO, MAYNOR | § | EP:17-CR-02662-KC |
| ALONSO CLAUDINO LOPEZ, JOSE | § | EP:17-CR-02663-KC |
| FRANCIS YANES-MANCIA, and | § | EP:17-CR-02664-KC |
| NATIVIDAD ZAVALA-ZAVALA, | § | |
| | § | |
| Defendants-Appellants. | § | |

———————————————

## BRIEF FOR THE UNITED STATES
———————————————

**JOHN F. BASH**
 *United States Attorney*

**MALLORY J. RASMUSSEN**
 *Assistant U.S. Attorney*
 *Illinois Bar #6306034*
 *700 E. San Antonio, Suite 200*
 *El Paso, Texas 79901*
 *(915) 534-6884*

## STATEMENT REGARDING ORAL ARGUMENT

The Government leaves the request for oral argument to the Court's discretion.

# TABLE OF CONTENTS

**Page**

Statement Regarding Oral Argument ........................................................ i

Table of Contents ............................................................................ ii

Table of Authorities .......................................................................... v

Statement of Jurisdiction .................................................................. 1

Statement of the Issues .................................................................... 2

Statement of the Case ...................................................................... 3

      A.    Regulatory Background ............................................................. 3

      B.    Facts ...................................................................................... 7

      C.    Procedural History ................................................................. 9

           1.    Initial Proceedings ......................................................... 9

           2.    The Court's Briefing Order and the Defendants' Motion to Dismiss ......................................................... 13

           3.    Trial and Sentencing ...................................................... 15

           4.    The Court's Opinion ...................................................... 17

Summary of the Argument ............................................................... 18

Argument ....................................................................................... 21

      I.    The Magistrate Court Correctly Found the Defendants Guilty of Improper Entry by an Alien and Reasonably Sentenced Them to Probation ............................................................................. 21

           Standard of Review ................................................................. 21

           A.    The Defendants Were Guilty of Violating § 1325 .................... 21

           B.    The Probationary Sentences Were Reasonable ....................... 23

      II.    The Magistrate Court Correctly Denied the Defendants' Motion to Dismiss and Related Motions for Acquittal .................... 24

Standard of Review .................................................................24

A.   Introduction...................................................................24

B.   The Magistrate Court Lacked Jurisdiction to Entertain
     Issues Regarding the Juveniles ...................................26

C.   Any Claim of Coerced or Involuntary Pleas was
     Unavailing....................................................................27

D.   The Outrageous Government Conduct Doctrine has No
     Application in These Circumstances .........................31

E.   The Defendants Failed to Establish Any Due Process
     Violations .....................................................................35

     1.   The Defendants' Pretrial Detention Did Not Violate
          Due Process ..........................................................36

     2.   The Defendants Failed to Establish Any
          Termination of Constitutionally-Protected Parental
          Rights .....................................................................37

     3.   Authorities Regarding Civil Immigration Detention
          Did Not Require a Different Result...............................41

          a.   The *Flores* Settlement ...........................................42

          b.   The ICE Directive .................................................43

F.   Dismissal Would Have Disastrous Policy Consequences ........44

III.  The Magistrate Court Did Not Plainly Err by Failing to Dismiss
      the Charges Based on the Defendants' New Arguments ....................46

Standard of Review .................................................................46

A.   The Un-asserted Necessity Defense Fails................................47

B.   There Was No *Brady* Violation .................................................50

C.   The Right Against Self-Incrimination Was Not Violated ........52

Conclusion ............................................................................................54

Certificate of Compliance .....................................................................55

# TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*Arizona v. United States*, 567 U.S. 387 (2012).....................................3, 4

*Block v. Rutherford*, 468 U.S. 576 (1984) ...............................................37

*Brady v. Maryland*, 373 U.S. 83 (1963) ...................................... 2, 20, 50

*Broussard v. Par. of Orleans*, 318 F.3d 644 (5th Cir. 2003)....................37

*Bunikyte, ex rel. Bunikiene v. Chertoff*, No. A-07-CA-164-SS, 2007 WL 1074070 (W.D. Tex. Apr. 9, 2007)...............................................................................42

*Castro v. Cabrera*, 742 F.3d 595 (5th Cir. 2014) ....................................40

*Chavez v. Martinez*, 538 U.S. 760 (2003)................................................52

*D.B. v. Cardall*, 826 F.3d 721 (4th Cir. 2016)............................... 5, 6, 44

*D&D Landholdings v. United States*, 82 Fed. Cl. 329 (2008)...................3

*Demore v. Kim*, 538 U.S. 510 (2003) .......................................................40

*Flores v. Lynch*, 828 F.3d 898 (9th Cir. 2016) ........................................42

*Gerstein v. Pugh*, 420 U.S. 103 (1975)....................................................26

*Ghaith v. Rauschenberger*, 493 F. App'x 731 (6th Cir. 2012)................41

*Grabowski v. Jackson Cty. Pub. Defs. Office*, 47 F.3d 1386 (5th Cir. 1995)..........28

*Hampton v. United States*, 425 U.S. 484 (1976)......................................32

*Hernandez v. Terrones*, 397 F. App'x 954 (5th Cir. 2010) ......................51

*Herrin v. Treon*, 459 F. Supp. 2d 525 (N.D. Tex. 2006) ........................41

*Hill v. Lockhart*, 474 U.S. 52 (1985) .......................................................28

*I.N.S. v. Lopez-Mendoza*, 468 U.S. 1032 (1984) ............................. 42, 43

*Kent v. United States*, 272 F.2d 795 (1st Cir. 1959)......................... 28, 29

*Malagon de Fuentes v. Gonzales*, 462 F.3d 498 (5th Cir. 2006)...................... 40, 41

*Maine v. Malo*, 577 A.2d 332 (Me. 1990) ...............................................29

*Martinez De Martinez v. Mukasey*, 259 F. App'x 24 (9th Cir. 2007) ....................45

*Matthew v. Johnson*, 201 F.3d 353 (5th Cir. 2000) ....................................28

*McCurdy v. Dodd*, 352 F.3d 820 (3rd Cir. 2003) .......................................41

*Omolo v. Gonzales*, 452 F.3d 404 (5th Cir. 2006).....................................23

*Padilla v. Kentucky*, 559 U.S. 356 (2010) .................................. 12, 13, 30

*Parrish v. Beto*, 414 F.2d 770 (5th Cir. 1969) .......................................28

*Rector v. Johnson*, 120 F.3d 551 (5th Cir. 1997)......................................51

*Rochin v. California*, 342 U.S. 165 (1952)...................................... 32, 34

*Silos v. Holder*, 538 F. App'x 426 (5th Cir. 2013) ...................................38

*Suggs v. Brannon*, 804 F.2d 274 (4th Cir. 1986) ......................................26

*Two Grand Jury Contemnors v. United States*, 826 F.2d 1166 (2d Cir. 1987).......52

*United States ex rel. K.E.R.G. v. Sec'y of Health & Human Servs.*, 638 F. App'x 154 (3d Cir. 2016)..........................................................................5

*United States ex rel. Mascia v. Zelker*, 450 F.2d 166 (2d Cir. 1971) ....................29

*United States v. Arrieta*, 862 F.3d 512 (5th Cir. 2017) ..........................................24

*United States v. Asibor*, 109 F.3d 1023 (5th Cir. 1997) ........................... 25, 32, 33

*United States v. Bagley*, 473 U.S. 667 (1985) .........................................51

*United States v. Boyd*, 55 F.3d 239 (7th Cir. 1995)...................................35

*United States v. Brizuela*, 605 F. App'x 464 (5th Cir. 2015) ...................... 4, 49, 50

*United States v. Bursey*, 416 F.3d 301 (4th Cir. 2005)...........................................21

*United States v. Cabrera*, 288 F.3d 163 (5th Cir. 2002) .........................................44

*United States v. Chavez-Betancourt*, 447 F. App'x 553 (5th Cir. 2011)................33

*United States v. Chavez-Hernandez*, 671 F.3d 494 (5th Cir. 2012) .......................46

*United States v. Comrie*, 842 F.3d 348 (5th Cir. 2016) ...........................................47

*United States v. Conroy*, 567 F.3d 174 (5th Cir. 2009)...........................................29

*United States v. Cordova-Soto*, 804 F.3d 714 (5th Cir. 2015) ........................ 46, 47

*United States v. Crook*, 479 F. App'x 568 (5th Cir. 2012)......................................48

*United States v. Diaz*, 733 F.2d 371 (5th Cir. 1984) ...............................................30

*United States v. Dimas-Flores*, 458 F. App'x 366 (5th Cir. 2012) ........................23

*United States v. Drayton*, 589 F. App'x 153 (4th Cir. 2015) .................................21

*United States v. Fazal-Ur-Raheman-Fazal*, 355 F.3d 40 (1st Cir. 2004)...............26

*United States v. Folse*, No. CR 15-2485 JB, 2016 WL 3996386 (D.N.M. June 15, 2016) .........................................................................................................................26

*United States v. Fortna*, 796 F.2d 724 (5th Cir. 1986)...........................................53

*United States v. Fraga*, 704 F.3d 432 (5th Cir. 2013) ...........................................21

*United States v. Gasaway*, 437 F. App'x 428 (6th Cir. 2011)................................29

*United States v. Gradys*, No. CRIM 2008-56, 2008 WL 5272510 (D.V.I. Dec. 16, 2008) .........................................................................................................................49

*United States v. Gutierrez*, 343 F.3d 415 (5th Cir. 2003)................................ 25, 33

*United States v. Handy*, 647 F. App'x 296 (5th Cir. 2016) ....................................46

*United States v. Harper*, 802 F.2d 115 (5th Cir. 1986) ..........................................48

*United States v. Hebert*, 813 F.3d 551 (5th Cir. 2015)...........................................23

*United States v. Hernandez-Amparan*, 600 F. Supp. 2d 839 (W.D. Tex. 2009) .....25

*United States v. Hollingsworth*, 783 F.3d 556 (5th Cir. 2015)...............................21

*United States v. Jaensch*, 552 F. App'x 206 (4th Cir. 2013)..................................53

*United States v. Johnson*, 68 F.3d 899 (5th Cir. 1995).....................................32, 33

*United States v. Johnson*, 603 F. App'x 867 (11th Cir. 2015) ...............................29

*United States v. King*, 424 F. App'x 389 (5th Cir. 2011) ...........................................21

*United States v. Lanford*, 838 F.2d 1351 (5th Cir. 1988) .........................................51

*United States v. Lee*, 217 F.3d 284 (5th Cir. 2000) ...................................................21

*United States v. McConnell*, 842 F.2d 105 (5th Cir. 1988) .....................................36

*United States v. Mertens*, No. CR03-73-N-EJL, 2004 WL 7324706 (D. Idaho Jan. 29, 2004) ...................................................................................................................33

*United States v. Navarre*, 310 F. Supp. 521 (E.D. La. 1969) ................................25

*United States v. Pellerito*, 878 F.2d 1535 (1st Cir. 1989) .......................................29

*United States v. Pierson*, 139 F.3d 501 (5th Cir. 1998)...........................................24

*United States v. Posada Carriles*, 541 F.3d 344 (5th Cir. 2008)............................33

*United States v. Posada-Rios*, 158 F.3d 832 (5th Cir. 1998)...................................48

*United States v. Reyes-Salgado*, 13 F. App'x 705 (9th Cir. 2001) .........................49

*United States v. Robinson*, 427 F. App'x 163 (3d Cir. 2011)...................................29

*United States v. Rojas-Marcano*, No. 18-130 PO, 2018 WL 1033200 (D.N.M. Feb. 22, 2018) ...................................................................................................................50

*United States v. Rojas-Yepes*, 630 F. Supp. 2d 18 (D.D.C. 2009).........................27

*United States v. Russell*, 411 U.S. 423 (1973)...........................................13, 16, 32

*United States v. Rylander*, 460 U.S. 752 (1983).......................................................53

*United States v. Salazar*, 958 F.2d 1285 (5th Cir. 1992)........................................21

*United States v. Salerno*, 481 U.S. 739 (1987).........................................................36

*United States v. Sipe*, 388 F.3d 471 (5th Cir. 2004) .................................................51

*United States v. Smith*, 7 F.3d 1164 (5th Cir. 1993).................................................32

*United States v. Tucker*, 28 F.3d 1420 (6th Cir. 1994)............................................35

*United States v. Uvalle-Patricio*, 478 F.3d 699 (5th Cir. 2007)...........................24

*United States v. Villanueva*, 408 F.3d 193 (5th Cir. 2005)....................................48

*United States v. Weeks*, 919 F.2d 248 (5th Cir. 1990).............................................33

*United States v. Willis*, 38 F.3d 170 (5th Cir. 1994)........................................ 25, 47

*Walding v. United States*, No. CIV.A. SA-08-CA124XR, 2009 WL 890265 (W.D. Tex. Mar. 30, 2009) ...............................................................................................6

*Weinberger v. Rossi*, 456 U.S. 25 (1982) ...............................................................44

*Williams v. Fla.*, 399 U.S. 78 (1970) ......................................................................53

*Wojtowicz v. United States*, 550 F.2d 786 (2d Cir. 1977) ......................................29

*Zadvydas v. Davis*, 533 U.S. 678 (2001) ...............................................................40

**Statutes**

6 U.S.C. § 279(b)(1)(B) ...........................................................................................5

6 U.S.C. § 279(g)(2) .................................................................................................4

8 U.S.C. § 1101(a)(3).............................................................................................23

8 U.S.C. § 1232(b)(3).................................................................................................4

8 U.S.C. § 1232(c)(1)..............................................................................................44

8 U.S.C. § 1325 ........................................................................................................49

8 U.S.C. § 1325(a)(1) ...................................................................................... passim

18 U.S.C. § 19 ............................................................................................................1

18 U.S.C. § 1325(a) ...................................................................................................1

18 U.S.C. § 3142 .....................................................................................................36

18 U.S.C. § 3231 ..................................................................................................2, 26

18 U.S.C. § 3401(a) ..................................................................... 2

18 U.S.C. § 3402 .......................................................................... 2

18 U.S.C. § 3559(a)(7) ................................................................ 1

**Rules**

Fed. R. App. P. 32(a)(5) ............................................................ 55

Fed. R. App. P. 32(a)(6) ............................................................ 55

Fed. R. App. P. 32(a)(7)(B) ...................................................... 55

Fed. R. App. P. 32(f) ................................................................. 55

Fed. R. Crim. P. 11(b)(1)(O) ..................................................... 30

Fed. R. Crim. P. 12(b)(2) ........................................................... 26

Fed. R. Crim. P. 18 .................................................................... 22

Fed. R. Crim. P. 58(b)(2) ............................................................. 9

**Regulations**

6 C.F.R. § 115.14 ......................................................................... 5

8 C.F.R. § 1236.3(b)(2) .............................................................. 44

## STATEMENT OF JURISDICTION

The Defendants were arrested on October 22, 23, and 24, 2017, and separately charged with the misdemeanor offense of improper entry by an alien under 8 U.S.C. § 1325(a)(1). (Vasquez ECF No.[1] 6; Dominguez ECF No. 6; Claudino ECF No. 6; Yanes ECF No. 6; Zavala ECF No. 6.)  All cases were assigned to the Magistrate Court (the Honorable Miguel Torres).   For first-time offenders, such as the Defendants, improper entry carries a maximum sentence of six months imprisonment.  18 U.S.C. § 1325(a).  Accordingly, in this context, improper entry is a Class B misdemeanor under 18 U.S.C. § 3559(a)(7), making it a "petty offense" pursuant to 18 U.S.C. § 19.  As such, the Magistrate Court had jurisdiction over the

---

[1] "Vasquez ECF No." and "Vasquez Ex." refer to filings and exhibits, respectively, in *United States v. Bianca Nieve Vasquez-Hernandez*, No. 3:17-MJ-4499-MAT (W.D. Tex.).  "Dominguez ECF No." and "Dominguez Ex." refer to filings and exhibits, respectively, in *United States v. Elba Luz Dominguez-Portillo*, No. 3:17-MJ-04409-MAT (W.D. Tex.).  "Claudino ECF No." and "Claudino Ex." refer to the filings and exhibits, respectively, in *United States v. Maynor Alonso Claudino Lopez*, No. 3:17-MJ-04456-MAT (W.D. Tex.).  "Yanes ECF No." and "Yanes Ex." refer to the filings and exhibits, respectively, in *United States v. Jose Francis Yanes-Mancia*, No. 3:17-MJ-04461-MAT (W.D. Tex.). "Zavala ECF No." and "Zavala Ex." refer to the filings and exhibits, respectively, in *United States v. Natividad Zavala-Zavala*, No. 3:17-MJ-04462-MAT (W.D. Tex.). As many of the filings in the cases below were substantively identical, in such instances the Government will refer to the filings in the *Vasquez* case, which are representative of the filings in the other cases.  "Appeal ECF No." refers to the prior filings in the present consolidated appeal, *United States v. Bianca Nieve Vasquez-Hernandez*, No. 3:17-CR-02660-PRM (W.D. Tex.).

Defendants' criminal cases[2] pursuant to 18 U.S.C. § 3231, 18 U.S.C. § 3401(a), and Rule 4(b)(1) of Local Rules, Appendix C. On December 1, 2017, the Magistrate Court found the Defendants guilty and sentenced them to one-year terms of non-reporting probation. (*E.g.*, Vasquez ECF No. 44.)

On December 14, 2017, the Defendants filed notices of appeal in each of their cases. (*E.g.*, Vasquez ECF No. 48.) Those appeals were timely-filed and this Court has jurisdiction over them pursuant to 18 U.S.C. § 3402, Rule 4(b)(1) of the Federal Rules of Appellate Procedure, Rule 58(g)(2)(B) of the Federal Rules of Criminal Procedure, and Rule 4(d) of Local Rules, Appendix C.

## STATEMENT OF THE ISSUES

1.      Whether the Magistrate Court correctly found the Defendants guilty of the misdemeanor offense of improper entry by an alien, 8 U.S.C. § 1325(a)(1), and reasonably sentenced them to one-year terms of non-reporting probation.

2.      Whether the Magistrate Court correctly denied the Defendants' motion to dismiss and related motions.

3.      Whether the Magistrate Court plainly erred by failing to dismiss the cases based on an un-asserted necessity defense, an alleged violation of *Brady v.*

---

[2] As discussed further below, *see* Part II.B, *infra*, that jurisdiction did not extend to tangential issues related to the juveniles with whom the Defendants entered the United States.

*Maryland*, 373 U.S. 83 (1963), or an alleged violation of the Sixth Amendment right against self-incrimination.

## STATEMENT OF THE CASE

### A. Regulatory Background

"Agencies in the Department of Homeland Security ["DHS"] play a major role in enforcing the country's immigration laws." *Arizona v. United States*, 567 U.S. 387, 397 (2012). The United States Border Patrol is an agency within the DHS that was formerly part of the Immigration and Naturalization Service ("INS"). *See D&D Landholdings v. United States*, 82 Fed. Cl. 329, 331 (2008). It "is the lead federal agency charged with securing the international border between the United States and Mexico . . . [and] is assigned the primary mission of detecting and preventing the entry of terrorists, weapons of mass destruction, and unauthorized aliens into the country, and interdicting drug smugglers and other criminals between official points of entry." *Id.* at 331-32 (alteration marks and internal quotation marks omitted). "Border Patrol agents have no official role at points of entry, where [Customs and Border Protection Officers] are responsible for conducting immigrations, customs, and agricultural inspections on entering aliens." *Id.* at 332 n.5 (internal quotation marks omitted). Additionally, a separate DHS agency, Immigration and Customs Enforcement ("ICE"), is "responsible for the

identification, apprehension, and removal of illegal aliens from the United States." *Arizona*, 567 U.S. at 397 (internal quotation marks omitted).

Notably, "[r]emoval is a civil, not criminal, matter." *Id.* at 396. "If removal proceedings commence, aliens may seek asylum and other discretionary relief allowing them to remain in the country or at least to leave without formal removal." *Id.* The Government's obligation to consider such requests for relief from civil removal, however, does not require it to "pause" criminal proceedings. *United States v. Brizuela*, 605 F. App'x 464, 465 (5th Cir. 2015).

Federal agencies are required to transfer unaccompanied alien juveniles to the custody of the Office of Refugee Resettlement ("ORR"), an agency within the Department of Health and Human Services, within 72 hours of determining that a juvenile is unaccompanied. *See* 8 U.S.C. § 1232(b)(3). Statute defines "unaccompanied alien" juveniles as persons who have "no lawful immigration status in the United States," have "not attained 18 years of age," and who either have "no parent or legal guardian in the United States" or have "no parent or legal guardian in the United States . . . *available to provide care and physical custody*." 6 U.S.C. § 279(g)(2) (emphasis added). Individuals entering the United States illegally may not possess reliable documentation establishing their family relationships. In such instances, DHS directs its agencies to "seek to obtain reliable evidence of a family relationship" when "determining the existence of a family unit for detention

purposes" in order to prevent sexual abuse of juveniles. 6 C.F.R. § 115.14. Consequently, juveniles have been deemed unaccompanied when the agencies' lack such information concerning their parentage. *See United States ex rel. K.E.R.G. v. Sec'y of Health & Human Servs.*, 638 F. App'x 154, 160 (3d Cir. 2016) (concluding that juvenile was "properly designated as [an unaccompanied juvenile] and transferred into HHS's custody" where adult accompanying her had no legal or biological relationship to her). Juveniles whose parents have been detained or imprisoned may also be deemed unaccompanied. *See D.B. v. Cardall*, 826 F.3d 721, 746-47 (4th Cir. 2016) (Floyd, J., dissenting) (agreeing that juvenile with incarcerated parent would be "unaccompanied").

Once an unaccompanied alien juvenile is in ORR's care, ORR is charged with ensuring that the juvenile's interests are considered in decisions and actions relating to their care and custody. 6 U.S.C. § 279(b)(1)(B). ORR has its own policies and procedures for placing children, reuniting them with their families, determining whether to release or detain them, and keeping their information confidential. *See* ORR, *ORR Guide: Children Entering the U.S. Unaccompanied* ("ORR Guide"), https://www.acf.hhs.gov/orr/resource/children-entering-the-united-states-unaccompanied (last reviewed April 2, 2018). Specifically, ORR takes measures to ensure the care and safety of alien juveniles apprehended in the United States without a parent or legal guardian available to provide care and custody. *See id.* at §§ 1.7.4,

2.1.  ORR also has a process in place that allows ORR to find family members and others who may qualify to care for an unaccompanied juvenile.  *Id.* at §§ 1.7.4, 2.2. ORR also makes it possible for individuals looking for an alien juvenile in ORR custody to make inquiries regarding the juvenile's placement.  *Id.* at § 1.5; *see also* ORR, *ORR Nat'l Call Center*, https://www.acf.hhs.gov/orr/resource/orr-national-call-center (last reviewed Mar. 6, 2018).  When preparing to release a juvenile to an adult sponsor, ORR seeks proof of identity, address, and relationship to the juvenile, including through birth certificates, hospital records, or school records.  ORR Guide § 2.2.4.  It also seeks to maintain the confidentiality of the juveniles' information.  *Id.* §§ 5.6.2, 5.6.3.

Additionally, a settlement agreement in the civil *Flores* litigation established policies for the detention, release, and treatment of juveniles in the custody of the former INS.  *See D.B.*, 826 F.3d at 732.  The intent of the *Flores* settlement was to create minimum guidelines and requirements regarding the juveniles' conditions of confinement to ensure their well-being and safety.  *See Walding v. United States*, No. CIV.A. SA-08-CA124XR, 2009 WL 890265, at *20 (W.D. Tex. Mar. 30, 2009). Further, the settlement's "purpose was to establish minimum standards for licensed programs relating to conditions of confinement."  *Id.* at 21.

**B. Facts**

The Defendants are citizens of El Salvador and Honduras who entered the United States from Mexico at a place that was not designated as a port of entry in late October of 2017. Each of the Defendants entered with a juvenile. The following facts are taken from the stipulations of fact submitted at trial, the Forms I-213 prepared by the Border Patrol based on information provided by the Defendants, and other exhibits admitted at trial. (*See, e.g.*, Vasquez ECF No. 46; Vasquez Exs. A, E.)

Defendant Elba Luz Dominguez-Portillo is a citizen of El Salvador who left her country around October 14, 2017, traveling through Mexico and arriving in Ciudad Juarez, Mexico, on October 21, 2017. Border Patrol apprehended Dominguez at 8:58 p.m. on October 21, 2017. At the time, Dominguez was walking on the levee road, north of the Rio Grande River, approximately 3.89 miles east of the Bridge of the Americas Port of Entry. She was apprehended with a juvenile that she claimed was her daughter. (*See* Dominguez ECF 57; Dominguez Exs. A, C.)

Defendant Maynor Alonso Claudino Lopez is a citizen of Honduras. He left the town of Naco, Honduras, around October 6, 2017, and traveled by bus to Ciudad Juarez, crossing the borders between Honduras and Mexico illegally in order to avoid detection along the way. Border Patrol apprehended Claudino at 6:09 a.m. on October 23, 2017. At the time, he was walking east on the levee approximately 4.6

miles east of the Bridge of the Americas Port of Entry. He was apprehended with a juvenile that he claimed was his son. (*See* Claudino ECF No. 46; Claudino Exs. A, F.)

Defendant Jose Francis Yanes-Mancia is a citizen of Honduras. He left his country around September 23, 2017, traveling by bus and other means until he arrived in Ciudad Juarez around October 21, 2017. After staying with an unknown man in Ciudad Juarez, he was apprehended by the Border Patrol with a group of fourteen individuals at 9:50 p.m. on October 22, 2017. At the time, he had just crossed the Rio Grande River and was approximately 1.46 miles west of the Paso Del Norte Port of Entry. One of the fourteen individuals was a juvenile whom Yanes claimed was his son. (*See* Yanes ECF No. 46-1; Yanes Exs. A, E.)

Defendant Natividad Zavala-Zavala is a citizen of Honduras. She left her country around August 23, 2017, traveling by bus and other forms of transportation until arriving in Ciudad Juarez around October 9, 2017, staying with strangers along the way. She stayed with an unknown man in Ciudad Juarez before being apprehended by the Border Patrol with the same group of fourteen individuals as Yanes on October 22, 2017. (*See* Zavala ECF No. 46-1; Zavala Exs. A, E.) One of the fourteen individuals was a juvenile that Zavala claims is her granddaughter. (Zavala ECF No. 14 at 10:24-11:2.)

Defendant Bianca Nieve Vasquez-Hernandez is a citizen of El Salvador. Border Patrol apprehended Vasquez at 9:45 p.m. on October 23, 2017. At the time, she was walking on the levee approximately one mile east of the Ysleta Port of Entry. She was apprehended with a juvenile that she claimed was her son. (*See* Vasquez ECF No. 46; Vasquez Exs. A, E.)

## C. Procedural history

### 1. Initial Proceedings

The Defendants were arrested and charged with a criminal violation under 8 U.S.C. § 1325(a)(1)—i.e., improper entry by an alien. (*E.g.*, Vasquez ECF No. 6.) The Defendants were then brought before the Magistrate Court for initial appearances on October 23, 24, and 26, 2017, where the Magistrate Court appointed counsel to represent them and set bond at $5,000. (*E.g.*, Vasquez ECF No. 8.)

An initial appearance on a misdemeanor charge such as improper entry generally involves the court informing the defendant of: the charge, the penalties, the right to retain counsel, the right to request appointed counsel, the right not to make a statement, the circumstances under which the defendant may secure pretrial release, and, for noncitizens, the right to request consular notification. *See* FED. R. CRIM. P. 58(b)(2). In addition to covering those subjects, the Magistrate Court also asked of all the defendants whether any one of them was accompanied by a "minor sibling or minor children?" (*E.g.*, Vasquez ECF No. 14 at 7:5-6.) All of the

Defendants stated that they entered with a juvenile who they claimed was their child or grandchild.[3] (*E.g.*, *id.* at 7:5-7.) The Magistrate Court then asked whether the defendants were "provided any information as to how to" find out more information about the juvenile. (*Id.* at 7:18-20.) The Magistrate Court urged the Defendants to "discuss this" with their attorney, who "might be able to give some assistance in terms of trying to get some information about the well-being or the whereabouts of your child." (*Id.* at 8:11-19.)

As part of this discussion at his initial appearance, Claudino stated that the Border Patrol agents provided him with documents at the time that he was separated from the juvenile, that he was told the juvenile would be placed with other children, but did not have information about his whereabouts. (Claudino ECF No. 15 at 11:25-13.) He then volunteered, however, that Border Patrol had told him that the juvenile could potentially be placed with Claudino's brother, who was living in Los Angeles. (*Id.* at 12:23-13:6.) Yanes stated that he was told that the juvenile would be taken to "an institution for children." (Yanes ECF No. 14 at 11:6-13.) He further stated that Border Patrol also collected an address for Yanes's brother—implying

---

[3] The Government notes that the Defendants' admissions in response to these questions is evidence that could have subjected them to criminal liability for committing the felony offense of bringing aliens to the United States under 8 U.S.C. § 1324(a)(1)(A)(i). Although smuggling one's own child can result in a sentencing reduction under U.S.S.G. § 2L1.1(b)(1), it is not a defense to the crime.

that the juvenile might be placed with his brother—but stated that he did not have another copy of the address. (*Id.* at 11:6-19.) Zavala also acknowledged that she was provided with "a piece of paper," but stated that she did not "know what the paper says." (Zavala ECF No. 14 at 11:14-17.)

Vasquez stated that she was told that her son would be taken to "camps" for juveniles and that she was assured that her son "was going to be okay." (Vasquez ECF No. 14 at 7:18-8:7-22.) After Vasquez stated that she was "worried" about her son, the Magistrate Court responded: "I would be very worried as well if it was me." (*Id.* at 9:9-11.) The Magistrate Court further advised Vasquez that, "given that you have this concern, given that it can have an impact in your case as to whether you decide to plead guilty or not, since the government has your child, you can discuss this with your attorney and hopefully your attorney can give you some assistance, all right, in terms of being able to locate the child." (*Id.* at 10:13-18.)

The Magistrate Court then set the cases for a status conference on November 1, 2017. (*E.g.*, Vasquez ECF No. 12.) At the status conference, the Magistrate Court explained that "this is a kind of a slightly unusual proceeding." (Vasquez ECF No. 54 at 2:17-19.) The Magistrate Court stated that it was "troubled" after a number of misdemeanor defendants had indicated at their hearings that they had been accompanied by juveniles, did not know where the juveniles were, and had not been

provided with any information at the time of their arrest or separation. (*Id.* at 2:19-3:18.)

Accordingly, the Magistrate Court indicated that it would issue an order "asking the parties to brief some issues that hopefully can answer some of these questions." (*Id.* at 5:8-11.) These included issues concerning the Government's procedures for providing information to misdemeanor defendants (including any procedures under the *Flores* settlement), whether misdemeanor defendants have fundamental parental rights, whether the circumstances raised issues under *Padilla v. Kentucky*, 559 U.S. 356 (2010), and whether the Magistrate Court had authority to examine these issues as part of the plea colloquy under Rule 11 of the Federal Rules of Criminal Procedure. (*Id.* at 6:6-8:7.)

Defense counsel then stated that he was already aware of the issues, had already researched them, and was ready to file a motion to dismiss on the subject within a matter of days. (*Id.* at 9:11-20; *see also id.* at 13:6.) The Court accordingly indicated that it would issue its briefing order, the Defendants would be permitted to address the briefing order in a consolidated motion, and the Government would then be permitted to respond. (*Id.* at 9:17-10:9, 13:19-15:17.) At the end of the conference, the Magistrate Court highlighted what it viewed as the "central issue": whether it had authority to consider these questions pursuant to Rule 11. (*Id.* at 16:2-11.)

**2. The Court's Briefing Order and the Defendants' Motion to Dismiss**

On November 2, 2017, the Magistrate Court issued its briefing order outlining the issues it wished the parties to address in their motion and response. (Vasquez ECF No. 3.) Those issues included whether the Magistrate Court had "legal authority to consider these issues within the context of a plea colloquy under [Rule] 11, specifically as it pertains to the voluntariness of the plea?" (*Id.*)

On November 7, 2017, the Defendants filed their motion to dismiss. (Vasquez ECF No. 13.) In their motion, the Defendants acknowledged that the elements of the improper entry charges were satisfied, stating that they are citizens of Honduras and El Salvador who entered the United States by crossing the Rio Grande River. (*Id.* at 1-2.) Nonetheless, the Defendants argued that the Magistrate Court should dismiss the cases because the Government's conduct in separating them from the juveniles: (1) violated civil detention procedures set forth in the *Flores* settlement and other authorities; and (2) violated the Due Process Clause's requirements concerning bond and plea hearings. (*Id.* at 2-10.) The Defendants also argued that they were being coerced into pleading guilty, rendering any guilty pleas involuntary. (*Id.* at 10-14.) The Defendants concluded their motion by stating that the Government's "conduct is simply outrageous!" (*Id.* at 14 (citing *United States v. Russell*, 411 U.S. 423, 431-32 (1973)) (emphasis omitted).) The Defendants did not submit any evidence in support of their motion.

On November 20, 2017, the Government filed its response arguing that: (a) the Magistrate Court lacked jurisdiction to consider tangential issues related to the juveniles; (b) the Defendants had not identified any recognized basis for dismissal and their remedy for an involuntary plea was to go to trial; (c) the Defendants had failed to establish coercion or involuntariness; (d) *Padilla* was inapposite; (e) the Defendants had failed to establish a Due Process violation; and (f) the *Flores* settlement and similar authorities had no applicability to the criminal prosecutions. (Vasquez ECF No. 17 at 7-20.) As the Defendants had only referenced the "outrageous government conduct" doctrine in passing, the Government responded in a footnote explaining that the Defendants had failed to establish any basis for such a claim. (*Id.* at 10 n.8.) The Government also explicitly noted that it could "not confirm that the Defendants are, in fact, related to the juveniles as they claim." (*Id.* at 3 n.3.)

As the parties were briefing the issues, the Government offered the Defendants plea agreements, to which it heard no response. (*E.g.*, Vasquez ECF No. 15 at 2.) Consequently, it filed a motion seeking a *Frye* hearing to ensure that the Defendants had heard the plea offers and were aware of the consequences of rejecting them. (*See* Vasquez ECF No. 15.) The Magistrate Court granted the

motion, but subsequently continued the hearing at defense counsel's request.[4] (*See* Vasquez ECF Nos. 16, 18, 19, 21, 22, 40.)

On November 27, 2017, the Magistrate Court heard argument on the motion to dismiss. (*See* Vasquez ECF No. 25.) The parties did not submit any evidence. (Vasquez ECF No. 41 at 3:8-16.) The Magistrate Court denied the motion on the record, indicating that it would "issue an order explaining my reasons." (*Id.* at 49:13-15.) The following day, the Magistrate Court issued an order denying the motion to dismiss and indicating that "[a]n opinion will be forthcoming." (Vasquez ECF No. 26.)

### 3. Trial and Sentencing

At the trials on December 1, 2017, the evidence consisted of stipulations of fact and joint exhibits specific to each Defendant. (*See, e.g.*, Vasquez ECF No. 46; Vasquez Exs. A-I.) In the stipulations of fact, the Defendants conceded that they entered the United States by wading across the Rio Grande River on the dates alleged in their complaints at various places in the El Paso area that are not designated ports of entry. (*E.g.*, Vasquez ECF No. 46.) The stipulations also noted that each of the Defendants entered with a juvenile who the Defendant claimed was their child or

---

[4] After the *Frye* hearing was continued several times at defense counsel's request (and over the Government's objection) and postponed until the day of trial, the Government agreed to drop the issue. (*See, e.g.*, Vasquez ECF Nos. 19, 22, 27, 29, 30, 32, 49 at 33:25-34:4.)

grandchild. (*E.g.*, *id.*; *see also* Zavala ECF No. 46-1.) The Defendants also stipulated that they were citizens of either El Salvador or Honduras, were born in those countries, and were aliens to the United States. (*E.g.*, Vasquez ECF No. 46.) The exhibits included maps and photographs of the areas where the Defendants entered, Forms I-213 concerning each Defendant, and foreign identification cards found on the Defendants' persons. (*E.g.*, Vasquez Exs. A, E, F, G.) Defense counsel also repeatedly moved for a judgment of acquittal based on the arguments in the Defendants' motion to dismiss—the Magistrate Court denied the motions. (*See, e.g.*, Vasquez ECF No. 49 at 34:9-18, 36:17-37:1.)

The Magistrate Court found the Defendants guilty of improper entry and proceeded to sentencing. (*E.g.*, Vasquez ECF No. 49 at 39:6-9.) At sentencing, the Defendants apologized for entering illegally and expressed distress at being separated from the juveniles. (*E.g.*, Vasquez ECF No. 49 at 43:14-46:7.) Several of the Defendants also thanked the Border Patrol. (*See* Vasquez ECF No. 49 at 44:2-5.) Prior to imposing the sentence, the Magistrate Court requested defense counsel's view as to whether a sentence of one year of probation would be more appropriate than a sentence of time-served, as counsel had requested. Defense counsel did not indicate any preference. (Vasquez ECF No 49 at 47:2-16.) The Magistrate Court sentenced each Defendant to one year of non-reporting probation, no fine, and remitted the special assessment. (*E.g.*, Vasquez ECF No. 44.) The Defendants

-17-

subsequently appealed. (*E.g.*, Vasquez ECF No. 48.) The Defendants also filed a motion for reconsideration (Vasquez ECF No. 42), which the Magistrate Court denied. (Vasquez ECF No. 52).

### 4. The Court's Opinion

On January 5, 2018, the Magistrate Court issued its 33-page opinion on the motion to dismiss. (*E.g.*, Vasquez ECF No. 51.) The Magistrate Court ultimately concluded that: (a) the Defendants were properly charged with violating § 1325; (b) that the Defendants' arguments regarding the coercion of guilty pleas were moot because they never attempted to plead guilty and their remedy was to go to trial; and (c) the various violations alleged by the Defendants were not enforceable within the context of a motion to dismiss in their criminal cases. (*See id.* at 24-26, 33.)

Prior to stating those conclusions, however, the Magistrate Court engaged in lengthy discourse of the violations alleged by the Defendants under an outrageous government conduct theory. (*See id.* at 7-24.) The Magistrate Court opined that: (a) it was "not disputed" that the Defendants had parental rights protected by the Constitution;[5] (b) the *Flores* settlement provided the Defendants with an enforceable "right to be provided immediate and continued contact with an accompanying

---

[5] The Government subsequently filed a motion to correct this misstatement of its position. (*E.g.*, Vasquez ECF No. 53.) That motion is currently pending before the Magistrate Court.

relative"; (c) ORR policy is "wholly inconsistent with the mandates of the *Flores* Settlement"; (d) and a 2013 ICE directive acknowledged "that parents maintain fundamental rights over their children regardless of immigration status." (*Id.* at 9, 11, 17, 20, 22.) The Magistrate Court further posited that *Padilla* was analogous to the Defendants' circumstances. (*Id.* at 26-29.) The court further asserted that "hypothetically" it would have to inquire into the issue on the record if a similarly situated defendant raised concerns about a juvenile during a plea colloquy. (*Id.* at 30-31.)

The Defendants subsequently submitted a filing indicating that Vasquez had received an immigration bond and the other Defendants had been removed from the United States. (*E.g.*, Vasquez ECF No. 65.)

## SUMMARY OF ARGUMENT

The Defendants crossed the Rio Grande River from Mexico into El Paso in late October of 2017. Shortly thereafter, they were apprehended by the Border Patrol and charged with the criminal misdemeanor offense of improper entry by an alien, 8 U.S.C. § 1325(a)(1). The Defendants stipulated to all of the facts establishing their guilt at trial before the Magistrate Court. They were convicted and sentenced to one year of probation. They offered no objection to the sentence when given the opportunity. Nonetheless, the Defendants now appeal.

Rather than contesting the elements of the charges, the Defendants seek to litigate whether the Border Patrol could separate them from juveniles with whom they entered the United States and whom they claim are their children or grandchildren. Below, the Defendants moved to dismiss under a number of theories, including coercion of guilty pleas, outrageous government conduct, Due Process, and the supposed violation of various civil detention authorities. The Magistrate Court correctly denied the motion for several reasons.

The Magistrate Court lacked jurisdiction to entertain these arguments as they are outside the realm of the charges and any potentially viable defenses. In any event, they were substantively unavailing. The Defendants were not coerced into pleading guilty as they never pled guilty or attempted to do so. Moreover, their remedy for any such claim was to go to trial, which they did. Regardless, courts have routinely rejected arguments that family pressures render a guilty plea involuntary. The outrageous government conduct doctrine was also inapplicable as the Defendants actively decided to enter the country illegally with no involvement by the Government and the conduct at issue (separation from the juveniles) bore no relevance to the charges. The Due Process arguments failed as the Defendants' pretrial criminal detention was plainly Constitutional, they failed to establish that they had constitutionally-protected parental rights or that any such rights were violated, and authorities such as the *Flores* settlement concerning civil immigration

detention bore no relevance to their criminal cases. The Defendants' request—dismissal of criminal charges for defendants entering with juveniles—would have the disastrous consequence of encouraging aliens to enter the United States with children to avoid prosecution.

Appearing to recognize the flaws in their defense below, the Defendants also advance several new arguments on appeal. They claim that the Government's failure to make the juveniles available as witnesses at trial violated their Due Process right to advance a necessity defense, violated *Brady v. Maryland*, 373 U.S. 83 (1963), and violated their Sixth Amendment right against self-incrimination. These arguments were not preserved and fair no better than their arguments below. Any necessity defense would have failed because the Defendants could have avoided committing the crime of improper entry by walking up to one of the many ports of entry in the El Paso area and requesting asylum. The juveniles' testimony could not have changed that fact. There was also no *Brady* violation as the Defendants were well aware that they entered with the juveniles and never made any effort to call them as witnesses. Similarly, the Defendants did not testify at trial and have not identified any compelled testimony that incriminated them. The court did not err by failing to sua sponte identify these issues and dismiss the charges.

The Defendants' convictions and sentences should be affirmed.

## ARGUMENT

**I.    The Magistrate Court Correctly Found the Defendants
Guilty of Improper Entry by an Alien and Reasonably
Sentenced Them to Probation**

### Standard of Review

A "district court reviewing a bench trial before a magistrate judge 'utilizes the same standards of review applied by a court of appeals in assessing a district court conviction.'"  *United States v. Drayton*, 589 F. App'x 153, 153 (4th Cir. 2015) (citing FED. R. CRIM. P. 58(g)(2)(D) and quoting *United States v. Bursey*, 416 F.3d 301, 305 (4th Cir. 2005)); *accord United States v. Hollingsworth*, 783 F.3d 556, 558 (5th Cir. 2015).  Accordingly, the Court reviews "the defendants' convictions for sufficiency of the evidence."  *United States v. Lee*, 217 F.3d 284, 288 (5th Cir. 2000). It determines whether there is sufficient evidence for the convictions de novo, "viewing all evidence and making all reasonable inferences in the light most favorable to the verdict."  *United States v. King*, 424 F. App'x 389, 393 (5th Cir. 2011) (citing *United States v. Salazar*, 958 F.2d 1285, 1290-91 (5th Cir. 1992)).  The Court reviews a federal sentence under the abuse of discretion standard.  *United States v. Fraga*, 704 F.3d 432, 437 (5th Cir. 2013).

### A.    The Defendants Were Guilty of Violating § 1325

After receiving stipulations of fact and joint exhibits into evidence at their bench trials, the Magistrate Court found each Defendant guilty of improper entry by

an alien, 8 U.S.C. § 1325(a)(1).  (*E.g.*, Vasquez ECF Nos. 46, 49 at 39:6-9; Vasquez Exs. A-I.)   The Defendants stipulated to the facts establishing their guilt. (*E.g.*, Vasquez ECF No. 46.)  In their motion to dismiss, they also did not dispute those facts, repeatedly indicating that they did not wish to discuss the strength of the Government's case against them.  (Vasquez ECF No. 13 at 3, 13.)  Rather, they asserted that their prosecutions were "premature," (*id.* at 3, 9-10), an argument that they reiterate on appeal. (Appeal ECF No. 11 at 23).  The Magistrate Court properly rejected that argument.  (Vasquez ECF No. 51 at 24-25.)

The elements of improper entry are that the defendant: (1) was an alien; (2) who entered or attempted to enter the United States; and (3) entered or attempted to enter at a time or place other than as designated by immigration officers.  8 U.S.C. § 1325(a)(1).  The Government must also establish that venue is proper in the Western District of Texas.  *See* FED. R. CRIM. P. 18.  The Defendants never disputed any of the elements of the charge.  Rather, they conceded that the elements were satisfied, agreeing to each one of them in the stipulations of fact introduced at their trials.  (*E.g.*, Vasquez ECF No. 46.)  Thus, the elements of the offense were established beyond any reasonable doubt.  The Government bore no burden to demonstrate anything else.

The Defendants' "premature" prosecution argument appears to be predicated on the idea that they could be able to obtain asylum or some other form of legal

status at some point after they entered.  (*See* Vasquez ECF No. 13 at 8-10; Appeal ECF No. 11 at 23.)  However, even if they are able to obtain any such status, it does not change the fact that they were aliens at the time that they illegally entered the United States.  Moreover, in the stipulations of fact, the Defendants conceded that they are aliens to the United States.[6]  (*E.g.*, Vasquez ECF No. 46.)  As the Magistrate Court correctly concluded, the "Defendants' novel premature prosecution arguments are not supported by law."  (Vasquez ECF No. 51 at 25.)

### B.    The Probationary Sentences Were Reasonable

At sentencing, the Magistrate Court imposed one-year terms of non-reporting probation.  (*E.g.*, Vasquez ECF No. 44.)  The Defendants acquiesced to the sentences (*see* Vasquez ECF No. 49 at 47:2-16), making them reviewable only for plain error.  *See United States v. Dimas-Flores*, 458 F. App'x 366, 369 (5th Cir. 2012).  Under any standard of review, however, their probationary sentence was entirely reasonable.  Similarly situated misdemeanor defendants in the El Paso Division frequently receive one year of non-reporting probation.

Moreover, the sentences were obviously not "grossly disproportionate to the offense" in violation of the Eighth Amendment.  *United States v. Hebert*, 813 F.3d

---

[6] For the purposes of an improper entry charge, an "alien" is any person who is not a citizen or national of the United States.  8 U.S.C. § 1101(a)(3).  A person can become a "national" only by birth or by completing the naturalization process. *Omolo v. Gonzales*, 452 F.3d 404, 409 (5th Cir. 2006).

551, 565 (5th Cir. 2015).  Contrary to their assertions, the Defendants were not sentenced to removal, "indefinite separation," or "probable termination of parental rights."  (Appeal ECF No. 11 at 26.)  Their separation from the juveniles was a consequence of their criminal conduct.  Separation from family members is the same collateral consequence that any individual detained on criminal charges would face.

## II. The Magistrate Court Correctly Denied the Defendants' Motion to Dismiss and Related Motions for Acquittal

### Standard of Review

The Court reviews a lower court's denial of a motion to dismiss a criminal charge de novo.  *See United States v. Arrieta*, 862 F.3d 512, 514 (5th Cir. 2017).  Constitutional challenges and issues of statutory interpretation are also reviewed de novo.  *Id.*; *United States v. Pierson*, 139 F.3d 501, 503 (5th Cir. 1998).  A motion for judgment of acquittal in these circumstances is also reviewed de novo.  *United States v. Uvalle-Patricio*, 478 F.3d 699, 701 (5th Cir. 2007).

### A. Introduction

As the Magistrate Court explained at the status conference, the "central issue" below was whether it had authority to consider the issues raised by briefing order and motion to dismiss as relevant to a Rule 11 plea colloquy.  (Vasquez ECF No. 54 at 16:2-11.)  However, by the time the Court issued its opinion, it correctly recognized that issue was "moot" as the Defendants had not pled guilty, attempted to plead guilty, or ever suggested that they wanted to plead guilty.  (*See* Vasquez

ECF No. 51 at 26.) Consequently, the court proceeded to analyze the issues under the outrageous government conduct doctrine. (*See id.* at 7-9, 11, 18, 21, 24-25.)

As discussed above, the Government satisfied its burden to prove the elements of the crime beyond a reasonable doubt. It was the Defendants' burden to establish any defense or basis for dismissal. *See United States v. Gutierrez*, 343 F.3d 415, 421 (5th Cir. 2003) (observing that defendant bears high burden of proof on motion to dismiss an indictment when alleging government misconduct); *United States v. Asibor*, 109 F.3d 1023, 1039 (5th Cir. 1997) (stating that "a defendant who asserts the defense of outrageous government conduct has an extremely high burden of proof."); *United States v. Willis*, 38 F.3d 170, 179 (5th Cir. 1994) (explaining that "the burden of proof is on the defendant" to establish affirmative defense such as duress); *United States v. Navarre*, 310 F. Supp. 521, 522 (E.D. La. 1969) (noting that dismissal based upon constitutional right requires stricter proof than dismissal based on nonconstitutional grounds and defendant bears the burden for dismissal under the Sixth Amendment); *United States v. Hernandez-Amparan*, 600 F. Supp. 2d 839, 841 (W.D. Tex. 2009) (stating that defendant moving to dismiss under Speedy Trial Act has burden of proof).

The Magistrate Court lacked jurisdiction to entertain these tangential issues. Moreover, even if it did have a basis for considering them, as discussed below, the

Defendants failed to establish that any of them provided a valid defense or other basis for dismissal.

### B. The Magistrate Court Lacked Jurisdiction to Entertain Issues Regarding the Juveniles

The Magistrate Court recognized that it had jurisdiction over these cases pursuant to 18 U.S.C. § 3231. (Vasquez ECF No. 51 at 6.) That jurisdiction does not extend to tangential issues concerning the juveniles, who are not parties to the cases. *See United States v. Fazal-Ur-Raheman-Fazal*, 355 F.3d 40, 55 (1st Cir. 2004) (concluding that district court had jurisdiction over criminal defendant but did not have jurisdiction to issue orders concerning the custody of defendant's children).

Moreover, Rule 12 of the Federal Rules of Criminal Procedure sets forth a number of bases for pretrial motions, including lack of jurisdiction, defects in instituting the prosecution, or defects in the charging document. *See* FED. R. CRIM. P. 12(b)(2), (b)(3)(A), (b)(3)(B). The Defendants have never cited any Rule 12 basis for their dismissal request. Moreover, "pretrial detention issues cannot be raised in defense of a criminal prosecution." *Suggs v. Brannon*, 804 F.2d 274, 279-80 (4th Cir. 1986) (citing *Gerstein v. Pugh*, 420 U.S. 103, 108 n. 9 (1975)); *see also United States v. Folse*, No. CR 15-2485 JB, 2016 WL 3996386, at *15 (D.N.M. June 15, 2016) ("The general rule is that a defendant must file a separate civil action to address his conditions of confinement."). Although the Defendants may have been able to challenge, through a civil action, their lack of access to information about the

juveniles while detained pending their criminal trials, they did not do so.[7] *Cf. United States v. Rojas-Yepes*, 630 F. Supp. 2d 18, 21 (D.D.C. 2009) ("Once a defendant is detained, . . . the most appropriate means for a challenge to the conditions of his confinement is either a habeas corpus petition or an action brought under 42 U.S.C. § 1983.").

Thus, there was no basis for the Magistrate Court to consider the issues raised by the Defendants' motion to dismiss in their criminal cases. Furthermore, as discussed below, the Defendants' and court's other bases for considering dismissal were inapplicable and, consequently, beyond the scope of the Magistrate Court's criminal jurisdiction.

## C. Any Claim of Coerced or Involuntary Pleas was Unavailing

The Defendants did not plead guilty or attempt to do so. Consequently, the Magistrate Court properly acknowledged that their claims of coerced pleas were "moot." (Vasquez ECF No. 51 at 26.) Nonetheless, it proceeded to engage in an extended analysis of the issue, concluding that *Padilla* and Rule 11 required it to consider such issues and suggested that it would do so in "hypothetical[]" future cases. (*Id.* at 26-31.) The Defendants only reference this contention in passing in

---

[7] Indeed, a civil challenge would have been outside the scope of the Federal Public Defender's representation of the Defendants in these criminal proceedings.

their appeal brief. (Appeal ECF No. 11 at 9.) Regardless, as discussed below, their argument was meritless and the Magistrate Court's analysis was misguided.

As the Government explained below, the Defendants' allegations do not rise to the level of invalidating a plea under the applicable legal standards. "The test for determining a guilty plea's validity is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *Matthew v. Johnson*, 201 F.3d 353, 364 (5th Cir. 2000) (quoting *Hill v. Lockhart*, 474 U.S. 52, 56 (1985)). "The plea must . . . not be the product of actual or threatened physical harm, or mental coercion overbearing the will of the defendant or of state-induced emotions so intense that the defendant was rendered unable to weigh rationally his options with the help of counsel." *Id.* at 365 (internal quotations and citations omitted).

"Not all pressures to plead, however, are considered illegal inducements." *Grabowski v. Jackson Cty. Pub. Defs. Office*, 47 F.3d 1386, 1389 (5th Cir. 1995), *vacated on reh'g en banc*, 79 F.3d 478 (5th Cir. 1996). "There are many reasons why a defendant may choose to plead guilty. They do not, simply by being denominated 'fears,' necessitate the conclusion that the plea was not voluntary." *Kent v. United States*, 272 F.2d 795, 798 (1st Cir. 1959). Notably, courts have generally found that family-related pressures do not rise to the level of overcoming a defendant's free will and rendering a plea involuntary. *See Parrish v. Beto*, 414

F.2d 770, 771 (5th Cir. 1969) (rejecting a claim of mental coercion based, in part, on "the dramatic pleas of" the defendant's mother).[8] Furthermore, the withholding of information directly related to the criminal case at issue does not necessarily constitute coercion. *United States v. Conroy*, 567 F.3d 174, 179 (5th Cir. 2009). Thus, in *United States v. Johnson*, 603 F. App'x 867, 872 (11th Cir. 2015), the Eleventh Circuit explained that the "Constitution requires only that a guilty plea be knowing and voluntary; not that it be fully informed." Accordingly, that court rejected the defendants' argument that the Government had an obligation to inform them of all facts that could be used to enhance their Guidelines sentencing ranges. *Id.* Because these facts did "not relate to their convictions" they did "not affect the knowing and voluntary nature" of their pleas. *Id.*

Here, the Defendants never pleaded guilty. Instead, they exercised their right to proceed to trial, and, thus, had no basis to claim that they were being coerced to plead guilty. Nonetheless, the Magistrate Court addressed whether such issues could be taken into consideration during future plea colloquies. On that topic, the court summarily dismissed the authorities discussed above, concluding that they "are

---

[8] *Accord United States v. Pellerito*, 878 F.2d 1535, 1541 (1st Cir. 1989); *Wojtowicz v. United States*, 550 F.2d 786, 792 (2d Cir. 1977); *United States ex rel. Mascia v. Zelker*, 450 F.2d 166, 168-69 (2d Cir. 1971); *Kent*, 272 F.2d at 798; *United States v. Gasaway*, 437 F. App'x 428, 435 (6th Cir. 2011); *United States v. Robinson*, 427 F. App'x 163, 167 (3d Cir. 2011); *Maine v. Malo*, 577 A.2d 332, 334 (Me. 1990).

inapposite to the issue presented by Defendants." (Vasquez ECF No. 51 at 30.)
Thus, the Court appeared to view the pressure resulting from the Defendants'
temporary inability to obtain information about the juveniles while detained pending
trial as being so unique ("a matter of first impression") that it was incapable of being
compared, e.g., to the Government's threat to prosecute a family member.
*See United States v. Diaz*, 733 F.2d 371, 375 (5th Cir. 1984) (concluding that threat
to prosecute defendant's family members does not constitute coercion when
Government has probable cause to bring such charges).

Rather than examining these analogous authorities, the Magistrate Court
relied on *Padilla v. Kentucky*, 559 U.S. 356 (2010). (Vasquez ECF No. 51 at 26-29.)
In *Padilla*, a noncitizen petitioner sought postconviction relief from his criminal
conviction based on his trial counsel's failure to advise him that he would be subject
to automatic deportation if he pled guilty. *Id.* at 359-60. The Supreme Court held
that counsel's failure to advise the petitioner about the immigration consequences of
his plea constituted constitutionally deficient performance. *Id.* at 366-69. In the
wake of *Padilla*, the Rule 11 plea colloquy was amended to include a warning
regarding immigration consequences for noncitizen defendants. FED. R. CRIM. P.
11(b)(1)(O). From this, the Magistrate Court inferred that *Padilla* requires that
defendants be apprised of "the immigration consequences and any possibility of

seeking legal relief for their minor children who accompanied them," in order for them to assess their options in a criminal case. (*See* Vasquez ECF No. 51 at 28.)

The Magistrate Court's attempt to stretch the *Padilla* rule from requiring *defense counsel* to alert a defendant pleading guilty to the immigration consequences of that decision to require *the Government* to provide information to a defendant concerning the status of their relatives' immigration proceedings is unsound. In addition to going well beyond the language of *Padilla* itself, it has no logical endpoint. The justice system would come to a screeching halt if the Government were required to research the status of civil immigration proceedings of a defendant's possible relatives before going forward with a guilty plea.

## D. The Outrageous Government Conduct Doctrine has No Application in These Circumstances

After only a cursory reference by the Defendants, the Magistrate Court proceeded to engage in an extended discussion of the outrageous government conduct doctrine. (*See* Vasquez ECF No. 13 at 14; Vasquez ECF No. 51 at 7-9.) Despite ultimately concluding that the Defendants were not entitled to relief under the doctrine, the Magistrate Court nonetheless asserted that the doctrine could apply in the present circumstances if the Defendants could show that the violation of a protected right that "was sufficiently outrageous to warrant a dismissal of the charges." (Vasquez ECF No. 51 at 9.) On appeal, the Defendants advance additional arguments under the doctrine. (Appeal ECF No. 11 at 37-39.)

The Supreme Court has suggested in dictum that it may be possible for a defendant to present "a situation in which the conduct of law enforcement agents is so outrageous that due process principles would absolutely bar the government from invoking judicial processes to obtain a conviction." *Russell*, 411 U.S. at 431-32 (citing *Rochin v. California*, 342 U.S. 165 (1952)). A plurality of the Court subsequently indicated that such an argument may "come into play only when the Government activity in question violates some protected right of the Defendant." *Hampton v. United States*, 425 U.S. 484, 490 (1976) (plurality opinion). The Fifth Circuit has stated that to warrant dismissal of criminal charges, government misconduct must be "'so outrageous' that it violates the principle of 'fundamental fairness' under the due process clause of the Fifth Amendment." *United States v. Asibor*, 109 F.3d 1023, 1039 (5th Cir. 1997) (quoting *United States v. Johnson*, 68 F.3d 899, 902 (5th Cir. 1995)). "Such a violation will only be found in the rarest circumstances." *Id.* (quoting *Johnson*, 68 F.3d at 902). "Thus, a defendant who asserts the defense of outrageous government conduct has an extremely high burden of proof." *Id; see also United States v. Smith*, 7 F.3d 1164, 1168 (5th Cir. 1993) (stating that the Fifth Circuit "has never invalidated a conviction" on grounds of outrageous government conduct).

"[T]o demonstrate outrageous government conduct [a defendant] needs to 'show government overinvolvement combined with a passive role by [the

defendant].'" *United States v. Posada Carriles*, 541 F.3d 344, 361 (5th Cir. 2008) (quoting *Asibor*, 109 F.3d at 1039). Such a claim will fail where the defendant was an "active, willing participant in the criminal conduct that le[d] to [the defendant's] arrest." *Id.* at 361 (quoting *Asibor*, 109 F.3d at 1039). Furthermore, a "defendant must show prejudice to his ability to receive a fair trial before charges will be dismissed." *Johnson*, 68 F.3d at 902 (citing *United States v. Weeks*, 919 F.2d 248, 254 (5th Cir. 1990)). Thus, an outrageous government conduct claim must fail where the alleged misconduct "bore virtually no relevance to the government's case against" the defendant at trial. *United States v. Gutierrez*, 343 F.3d 415, 422 (5th Cir. 2003); *see also United States v. Chavez-Betancourt*, 447 F. App'x 553, 557 (5th Cir. 2011) (rejecting claim based upon allegedly forged chain of custody receipt where receipt was not admitted into evidence); *United States v. Mertens*, No. CR03-73-N-EJL, 2004 WL 7324706, at *2 (D. Idaho Jan. 29, 2004) (rejecting claim where "many of the allegations raised in the motion relate to collateral matters not relevant to this prosecution and more properly addressed in other contexts").

Here, the Government played no role whatsoever in the Defendants' illegal entries. Nor did the Government have anything to do with their decision to bring juveniles with them while traveling thousands of miles to illegally cross the Rio Grande River under the cover of darkness. Moreover, the Defendants could not possibly show that their ability to receive a fair trial was prejudiced by their lack of

contact with the juveniles as such issues had no bearing on the charges or any legally viable defenses.

Nor does this case bear any resemblance to *Rochin*, the case relied upon by the Defendants (Appeal ECF No. 11 at 38-39) and cited by the Supreme Court in *Russell* as an example of such conduct. In that case the Government pumped the defendant's stomach against his will and then used the drugs obtained from the procedure as evidence against him. 342 U.S. at 166. Here, the Government did not separate the Defendants from the juveniles to obtain evidence against the Defendants; it did so because the Defendants had committed a crime and could not provide care for the juveniles while being tried for those crimes.[9]

Instead of analyzing the Defendant's passing outrageous conduct claim under the Fifth Circuit's guidance, the Magistrate Court construed it as a basis for considering a variety of theoretical violations which were not properly considered within the context of these criminal proceedings. In doing so, the Magistrate Court appeared to misconstrue the statement in the *Hampton* plurality opinion that an

---

[9] The Defendants also contend that the Government should not have offered plea agreements and filed a *Frye* motion while their motion to dismiss was pending because a *Frye* motion is a "trial" motion and a motion to dismiss is a "pretrial" motion. (Appeal ECF No. 11 at 38-39.) Tellingly, they have not cited any support for this novel assertion. Regardless, the Government's conduct was entirely reasonable because it was sensible to think the Defendants would want to timely resolve their criminal cases. The Defendants ultimately sat in jail for over 30 days on charges for which most defendants serve two weeks or less.

outrageous conduct claim may only come into play where the "Government activity in question violates some protected right of the Defendant." (Vasquez ECF No. 51 at 7-9.) The *Hampton* court was attempting to restrain the doctrine from becoming its own independent defense separate from entrapment. *See United States v. Tucker*, 28 F.3d 1420, 1423 (6th Cir. 1994). It does not appear that *Hampton* intended to enlarge the doctrine to serve as a basis for considering a variety of claimed violations that might be cognizable in a civil action but are wholly irrelevant to the criminal charges at issue. Thus, the outrageous government conduct doctrine had no application in these cases.[10]

## E.     The Defendants Failed to Establish Any Due Process Violations

Under the rubric of Due Process, the Defendants contend that their convictions should be thrown out because they were detained pending trial, because their parental rights were allegedly "terminated," and because the Government allegedly violated immigration detention policies. (Appeal ECF No. 11 at 16-18, 20-21, 24, 30-37.) The Magistrate Court agreed with some of these points, but ultimately found that they were not redressable in the context of these criminal

---

[10] The Magistrate Court itself acknowledged that the defense has generally been limited to an entrapment context and may no longer be valid. (Vasquez ECF No. 51 at 8-9); *accord Tucker*, 28 F.3d at 1427 (discussing the "strong reasons for concluding that such a defense simply does not exist"); *United States v. Boyd*, 55 F.3d 239, 241 (7th Cir. 1995) (holding that "the doctrine does not exist in" the Seventh Circuit).

prosecutions. (Vasquez ECF No. 51 at 9-24, 31-33.) As discussed below, even to the extent that these authorities could be considered here, the Government's actions did not violate them.

### 1. The Defendants' Pretrial Detention Did Not Violate Due Process

Prior to trial, the Defendants were detained on their criminal charges with a bond set at $5,000 within days of their arrest. (*See* Vasquez ECF No. 51 at 24.) This is commonplace in the criminal justice system and plainly does not constitute a Due Process violation any more that it would for any other alien facing criminal charges. The Defendants' detention was authorized by 18 U.S.C. § 3142, which the Supreme Court upheld against a Due Process challenge in *United States v. Salerno*, 481 U.S. 739 (1987). The modest $5,000 bond is plainly constitutional, particularly in light of the fact that the Defendants are aliens with minimal or no ties to the United States who could easily flee to Mexico which, although not their home country, is a foreign country approximately one mile from the courthouse. *See United States v. McConnell*, 842 F.2d 105, 109 (5th Cir. 1988) (upholding $750,000 bail even where defendant was unable to pay it, concluding amount was "neither constitutionally nor statutorily infirm").

The Defendants real dispute is with the conditions of their pretrial confinement, which limited their ability to follow ORR's procedures and contact the juveniles. As discussed above, *see* Part II.B, *supra*, the Magistrate Court lacked

jurisdiction to consider such issues. Regardless, even if they were cognizable here, the conditions were constitutional. The courts have upheld various conditions of detention against civil challenges, including "double-bunking" and "denials of such items as visitation, telephone access, recreation, mail, legal materials, and showers for a three-day period." *Broussard v. Par. of Orleans*, 318 F.3d 644, 658 (5th Cir. 2003). The Defendants' difficulty obtaining information about the juveniles is no different from the circumstances faced by any other arrestee detained on criminal charges who has their liberty restricted. *See Block v. Rutherford*, 468 U.S. 576, 589 (1984) (upholding constitutional challenge to blanket prohibition on visits from family or friends for pretrial detainees). The Defendants' pretrial detention did not violate any rights and was appropriate.

## 2. The Defendants Failed to Establish Any Termination of Constitutionally-Protected Parental Rights

The Magistrate Court concluded that the Defendants had constitutionally-protected parental rights, incorrectly stating that the issue was undisputed. (*See* Vasquez ECF No. 9-11.) Nonetheless, the court concluded that the Defendants had "failed to provide sufficient evidence demonstrating they [we]re entitled to dismissal" on that basis. (*Id.* at 11.) On appeal, the Defendants reassert these arguments and also argue that the Government failed to pursue its "claim" that they failed to establish parentage. (Appeal ECF No. 11 at 17, 24, 30-37.) Contrary to the court and Defendants' assumptions, the burden was on the Defendants to

-38-

establish their alleged rights and, even if they had met that burden, the Government did not violate them.

The Defendants did not testify at trial. Although Defendants claim they did so in their brief, they actually appear to refer to their own allocutions at sentencing. (*See* Appeal ECF No. 11 at 32.) The stipulations of fact were carefully phrased to indicate that the Defendants had entered the United States accompanied by juveniles who they "claimed" were their children or grandchildren. (*E.g.*, Vasquez ECF No. 46.) The Government's Forms I-213, which were admitted as exhibits at trial, also reflected these unsworn claims, as did the Defendants' statements at their initial appearances. (*See* Vasquez Ex. A; Vasquez ECF No. 14 at 7:5-7); *Silos v. Holder*, 538 F. App'x 426, 429 (5th Cir. 2013) (noting that Form I-213 reflects information provided by an alien to an agent).

The Government has never disputed that the Defendants *claimed* to have entered with their child or grandchild. Rather, the Government's point all along has been that it does not know whether individuals entering the country illegally are related or not.[11] (*See* Vasquez ECF No. 17 at 3 n.3.) In fact, it is not uncommon for

---

[11] The Defendants' cite Government counsel's statement at the motion argument to support their claim that the Government "waived" this "issue." (Appeal ECF No. 11 at 31.) Read in context, counsel's statement was entirely consistent with the position asserted in the Government's response below and in this brief. (*See* Vasquez ECF No. 41 at 27:11-21; 41:15-19, 44:8-11, 46:4-47:4, 48:21-24.) Indeed, defense counsel acknowledged the Government's position at the same

smugglers to claim that juveniles accompanying them are their own children. Apparently, the Defendants would have the Government take all such claims at face value.

In any event, lack of parentage was not an element of the offense of which the Defendants were convicted. *See* 8 U.S.C. § 1325(a)(1). Contrary to the Defendants' suggestion (Appeal ECF No. 11 at 31), the Government bore no burden to establish it. To the extent that the Defendants relied on their parentage (or grandparentage) in connection with their motions, they bore the burden to establish it. (*See* Part II.A, *supra*.)

The Magistrate Court appeared to struggle with the fact that the Defendants had the burden to establish parentage, comparing them to criminal defendants in state court facing state Child Protective Services investigations. (*See* Vasquez ECF No. 41 at 33:25-34:11.) A more apt comparison, however, would be an individual detained on criminal charges while simultaneously attempting to establish paternity. Obviously, in such circumstances, the individual's ability to litigate the paternity claim would be diminished, but that fact would not entitle him to relief in his criminal case.

---

hearing. (*Id.* at 11:3-7 ("For example, at Footnote 3, they suggest that these guys may not even be their real parents.").) Even the Magistrate Court appeared to acknowledge the Government's position, before sweeping it aside and seeking to impose the burden on the Government. (Vasquez ECF No. 51 at 6 n.11.)

Even if the Defendants had established that they were the parents of the juveniles, that alone would not demonstrate a violation of any constitutional right. The Defendants do not necessarily have the broad Due Process rights that they claim in the context of immigration proceedings. The Supreme Court has explained that aliens who are "paroled" into the United States for limited purposes have not effected an "entry," and do not have the same constitutional rights under the Due Process clause as citizens or aliens who have entered. *See Zadvydas v. Davis*, 533 U.S. 678, 693 (2001); *Castro v. Cabrera*, 742 F.3d 595, 599-601 (5th Cir. 2014); *see also Demore v. Kim*, 538 U.S. 510, 531 (2003) (concluding that alien's six month detention pending removal proceedings did not violate Due Process).

Moreover, even if they did have full Due Process rights, the Defendants would then be in the same situation as any parent detained on criminal charges pending trial. In such situations, a parent's liberty will be restricted, including their ability to associate with a child. In similar situations courts have rejected civil challenges based upon alleged violations of parental rights. The Fifth Circuit rejected a claim of an alien with children who were United States citizens where she was barred from returning to the United States. *Malagon de Fuentes v. Gonzales*, 462 F.3d 498, 505-06 (5th Cir. 2006). In doing so, it explained that a contrary holding "would subject to strict scrutiny any attempt by the government to incarcerate or bar from entry into the country a parent with children, or child with parents, in the United

States." *Id.*; *see also Ghaith v. Rauschenberger*, 493 F. App'x 731, 739 (6th Cir. 2012) (concluding that allegations that police conspired to deny parental rights to civil plaintiff-arrestee were "insufficient to establish a constitutional violation"); *McCurdy v. Dodd*, 352 F.3d 820, 827 (3rd Cir. 2003) ("[T]he Supreme Court has protected the parent only when the government *directly* acts to sever or otherwise affect his or her legal relationship with a child. The Court has never held that governmental action that affects the parental relationship only incidentally . . . is susceptible to challenge for a violation of due process"); *Herrin v. Treon*, 459 F. Supp. 2d 525, 544 (N.D. Tex. 2006) (rejecting civil claim based on "constitutional rights as a parent").

The same result must follow here. The mere fact that an individual committing the criminal offense of improper entry was accompanied by a juvenile cannot nullify that offense.

### 3.  Policies Regarding Civil Immigration Detention Did Not Require a Different Result

Although ultimately recognizing that they did not provide any basis for dismissal in these cases, the Magistrate Court found the civil immigration detention authorities relied on by the Defendants to be persuasive. (Vasquez ECF No. 51 at 11-24, 31-33.) The Defendants reiterate some of these arguments on appeal. (Appeal ECF No. 11 at 16, 20-21.) Contrary to their analysis, however, these authorities were plainly inapplicable.

### a.  The *Flores* Settlement

Courts have held that the *Flores* settlement does not apply to the parents of the juveniles covered by the agreement.  *See Bunikyte, ex rel. Bunikiene v. Chertoff*, No. A-07-CA-164-SS, 2007 WL 1074070, at *16-17 (W.D. Tex. Apr. 9, 2007) (holding the *Flores* settlement creates no rights in the parents of alien juveniles and noting that "nothing in the settlement agreement expresses a preference for releasing parents who have violated immigration laws"); *see also Flores v. Lynch*, 828 F.3d 898, 908 (9th Cir. 2016) (citing *Bunikyte*).  Regardless, standards for civil detention during the course of immigration proceedings for individuals who are not before the Court are irrelevant to this criminal case.  As the Supreme Court has explained, an immigration proceeding is "a purely civil action to determine eligibility to remain in this country," which is distinct from the crime of unlawful entry.  *I.N.S. v. Lopez-Mendoza*, 468 U.S. 1032, 1038 (1984).

Nonetheless, the Magistrate Court read a requirement into the *Flores* settlement for the Government to provide "immediate and continued contact with an accompanying relative" to a detained juvenile.  (Vasquez ECF No. 51 at 17.)  The court relied primarily on paragraph 12, requiring the INS to provide juveniles with, among many other things, "contact with family members who were arrested with the minor."  (Vasquez ECF No. 17-1 at 8.)  Even according to the Magistrate Court's own phrasing, this was a right belonging to the juveniles.  In any event, the same

paragraph requires the INS to "segregate unaccompanied minors from unrelated adults." (*Id.*) When aliens cross the border illegally without proof of their alleged family relationship, the Government is thus required to separate them to protect against the very real possibility of child abuse and trafficking. Regardless, the Magistrate Court's strained reading of the *Flores* settlement is not supported by the language or intent of that agreement and, more importantly, the agreement is not applicable in these criminal cases.

### b.   The ICE Directive

The Defendants also cited an ICE civil enforcement policy directive in support of their request for dismissal, and the Magistrate Court considered the directive as well. That directive, however, explicitly states that it "may not be relied upon to create any right or benefit, substantive or procedural, enforceable at law by any party in any administrative, civil or criminal matter." *See* ICE, *11064.1: Facilitating Parental Interests in the Course of Civil Immigration Enforcement Activities*, https://www.ice.gov/doclib/detention-reform/pdf/ parental_interest_directive_signed.pdf (issued Aug. 23, 2013). This directive concerning civil enforcement is plainly not binding on criminal pretrial detention. In any event, the Defendants were arrested by Border Patrol, which is a separate

agency not bound by ICE directives. ICE has had no involvement in these prosecutions.[12]

### F. Dismissal Would Have Disastrous Policy Consequences

As the Government noted below, dismissing these cases because the Defendants were separated from the juveniles could have disastrous effects. Dismissal would incentivize aliens to make illegal entries with juveniles in order to avoid prosecution, and thereby encourage the trafficking of children. This would defy Congress's directives. *See D.B.*, 826 F.3d at 738-39 (noting Congress's "unmistakable" intention to protect children from trafficking and exploitation); *see also* 8 U.S.C. § 1232(c)(1) (requiring policies and programs to ensure juveniles "are protected from traffickers and other persons seeking to victimize or otherwise engage such children in criminal, harmful, or exploitative activity").

Unfortunately there are numerous examples of adults who posed as the parents of children that they were trafficking, smuggling, or using as props in an attempt to avoid prosecution. *See, e.g.*, *United States v. Cabrera*, 288 F.3d 163, 166 (5th Cir.

---

[12] The Defendants also rely on two floor speeches of a single legislator on appropriations bills in 2005 and 2006 (Appeal ECF No. 11 at 16, 21), which are not controlling here. *Weinberger v. Rossi*, 456 U.S. 25, 35 n.15 (1982) (stating that the remarks of even a "sponsor of legislation are certainly not controlling in analyzing legislative history"). Additionally, the regulation cited by the Defendants (Appeal ECF No. 11 at 21) applies to individuals in civil, not criminal, detention. 8 C.F.R. § 1236.3(b)(2).

2002) (discussing smuggling scheme whereby defendants "assisted individuals in illegally entering the United States from Mexico by paying parents to permit their children to accompany immigrants across the border" in an attempt to take advantage of Border Patrol "policy of returning families with young children to Mexico rather than detaining them and charging them with illegal entry"); *Martinez De Martinez v. Mukasey*, 259 F. App'x 24, 25 (9th Cir. 2007) (affirming determination that individual "knowingly participated in the smuggling plan by pretending to be the alien child's mother"); U.S. Federal News, *Ecuadorian Couple Sentenced to More Than 5 Years in Federal Prison for Alien Smuggling Conspiracy*, Sept. 7, 2016 (discussing an investigation revealing that defendant "smuggled a 2-year-old El Salvadoran child through El Paso's Bridge of the Americas Port of Entry" by using "her own child's birth certificate to facilitate the smuggling" and that another child was raped by smugglers involved in the same conspiracy).[13]   Not only is the

---

[13] The events discussed in this article resulted in the following prosecutions: *United States v. Estrella Villota*, No. 3:15-CR-1603-KC(1) (W.D. Tex. 2016) (conviction for alien smuggling), *United States v. Malagon Sandoya*, No. 3:15-CR-1603-KC(2) (W.D. Tex. 2016), (same), and *United States v. Marcial*, No. 3:15-CR-1603-KC(5) (W.D. Tex. 2016), (conviction for false statement). *See also United States v. Castro*, No. 3:11-CR-03064-PRM (W.D. Tex.) (concerning defendant's prosecution for smuggling an Ecuadorian child who she presented as her United States citizen daughter); *United States v. Martinez Velez*, No. 3:13-CR-02685-DB (W.D. Tex.) (similar); *United States v. Garcia*, No. 3:17-MJ-4746-RFC (W.D. Tex.) (similar).

Defendants' position unsupported, it is bad policy that could endanger more children.

### III. The Magistrate Court Did Not Plainly Err by Failing to Dismiss the Charges Based on the Defendants' New Arguments

### Standard of Review

Arguments not raised before the trial court are reviewed for plain error. *United States v. Cordova-Soto*, 804 F.3d 714, 722 (5th Cir. 2015) (citing *United States v. Chavez-Hernandez*, 671 F.3d 494, 497 (5th Cir. 2012)). This rule recognizes that affording a more generous standard of review to "a defendant who makes a vague objection in the trial court, followed by a substantial and specific legal brief in the appellate court, would undermine the orderliness intended by" the rules. *Chavez-Hernandez*, 671 F.3d at 497 (citing FED. R. CRIM. P. 52). Rather, "[t]o preserve error, an objection must be sufficiently specific to alert the [trial] court to the nature of the alleged error and to provide an opportunity for correction." *United States v. Handy*, 647 F. App'x 296, 298 (5th Cir. 2016).

Below, the Defendants made a vague statement at trial where they referred to the juveniles as "material witnesses" whose absence allegedly affected the Defendants' rights against self-incrimination. (*See* Appeal ECF No. 11 at 10.) This argument was not part of the Defendants' motion to dismiss. Furthermore, the Defendants did not attempt to call the juveniles as witnesses, did not articulate how

their proposed testimony would be "material" to the criminal cases, and did not testify themselves. Their vague statement did not provide a basis for the Magistrate Court to rule on these issues in the first instance and was not sufficient to preserve their new arguments concerning their un-asserted necessity defense, their *Brady* claim, and right against self-incrimination.

"To succeed on plain error review, [a defendant] must show (1) a forfeited error, (2) that is clear or obvious, and (3) that affects [the defendant's] substantial rights." *United States v. Comrie*, 842 F.3d 348, 350 (5th Cir. 2016) (citing *Cordova-Soto*, 804 F.3d at 722). Even then, the courts will exercise their "discretion 'to remedy the error only if the error seriously affects the fairness, integrity or public reputation of judicial proceedings.'" *Id.* (citing *Cordova-Soto*, 804 F.3d at 722). As discussed below, there were no errors, let alone clear and obvious errors affecting the Defendants' substantial rights.

### A. The Un-asserted Necessity Defense Fails

The Defendants contend that they were deprived of the opportunity to establish a necessity defense through the juveniles. (Appeal ECF No. 11 at 10-13.) It was the Defendants' burden to establish such a defense. *Willis*, 38 F.3d at 179. The Defendants never attempted to call the juveniles as witnesses or assert this defense below, and in any event, the defense is inapplicable.

In order to establish a constitutional violation based on a contention that the Government has made a witness unavailable, the defendant must show that the witness's testimony would have been material and favorable to the defense. *United States v. Villanueva*, 408 F.3d 193, 200 (5th Cir. 2005); *United States v. Crook*, 479 F. App'x 568, 578 (5th Cir. 2012). To establish a necessity defense such as duress or coercion, defendants must show that they were facing an "imminent" threat of serious bodily injury, did not "recklessly or negligently" create the situation, had no "reasonable legal alternative to violating the law," and causation. *United States v. Posada-Rios*, 158 F.3d 832, 873 (5th Cir. 1998) (citing *United States v. Harper*, 802 F.2d 115, 117 (5th Cir. 1986)); *see also* 5th Cir. Pat. Jur. Inst. 1.36. If a defendant's crisis involves a selection from among several solutions, some of which do not involve criminal acts, the necessity defense must fail. *Posada-Rios*, 158 F.3d at 874. Rather, they must show "absolute and uncontrollable necessity." *Id.*

Here, the Defendants offered no testimony or evidence regarding the nature of the threats they faced in their home countries. Nor did they explain how imminent those threats were before they crossed the border illegally—thousands of miles away from their home countries. Even more problematic, however, they did not establish that they had no other alternative to crossing the border illegally. First, they did not show that there were no other places in their own countries where they could have relocated to escape the threats. Second, they did not show that there were no other

countries where they could have relocated to escape the threats. Third, and most significantly, the Defendants did not show that they could not have walked up to one of the ports of entry in El Paso—within several miles of where they entered illegally—and requested asylum. Presenting oneself for inspection at a port of entry and requesting asylum is not a crime. *Cf.* 8 U.S.C. § 1325; (Vasquez ECF No. 41 at 16:5-13; Vasquez ECF No. 49 at 10:3-6.) Because the Defendants could have avoided committing their crimes by requesting asylum at a port of entry, their necessity defense must fail.

The Defendants also contend that four of them asserted "credible fear" claims that the Government failed to consider. (Appeal ECF No. 11 at 12, 18-20, 22-24.) However, asserting "credible fears" of violence in one's home country is not a defense to illegal entry outside of the requirements of a necessity defense. Moreover, contrary to the Defendants' suggestion, there is no requirement that the Government suspend criminal proceedings while a criminal defendant pursues immigration relief. The Fifth Circuit has explicitly rejected that argument. *Brizuela*, 605 F. App'x at 465 ("no legal authority mandates a pause to criminal proceedings until the reasonable-fear interview takes place"; *see also United States v. Reyes-Salgado*, 13 F. App'x 705, 706 (9th Cir. 2001); *United States v. Gradys*, No. CRIM 2008-56, 2008 WL 5272510, at *1 (D.V.I. Dec. 16, 2008).

Furthermore, the prosecution of the Defendants for improper entry did not preclude them from seeking asylum in immigration proceedings. *See United States v. Rojas-Marcano*, No. 18-130 PO, 2018 WL 1033200, at \*3 (D.N.M. Feb. 22, 2018). The Defendants have not shown that they were denied the opportunity to make that request in their immigration proceedings. And even if such a showing was made, it has no relevance to their criminal prosecutions. *See Brizuela*, 605 F. App'x at 464 (explaining that even if Government violated regulation calling for immediate credible-fear interview, "such a violation has no relevance to the prosecution for illegal reentry").[14]

In short, the Defendants could not have asserted any valid necessity defense. Consequently, the absence of the juveniles at trial did not prejudice them or deny them a fair trial.

## B.     There Was No *Brady* Violation

Based upon the supposed denial of the opportunity to pursue their flawed necessity defense, the Defendants also claim that the absence of the juveniles at trial violated *Brady v. Maryland*, 373 U.S. 83 (1963). (Appeal ECF No. 11 at 26-30, 34-37.) To demonstrate a *Brady* violation, the defendant must show that (1) the

---

[14] Notably, merely making a "credible fear" claim is not sufficient to show that an alien is entitled to asylum. Rather, the alien bears the burden of proving that he or she faces persecution on account of race, religion, nationality, membership in a particular social group, or political opinion. *See* 8 U.S.C. § 1158(b)(1)(B)(i).

prosecution suppressed or withheld evidence, (2) the evidence was favorable, and (3) the evidence was material to the defense. *United States v. Lanford*, 838 F.2d 1351, 1355 (5th Cir. 1988). The Defendants cannot satisfy the required elements.

Significantly, the Government "bears no responsibility to direct the defense toward potentially exculpatory evidence that is either known to the defendant or that could be discovered through the exercise of reasonable diligence." *United States v. Sipe*, 388 F.3d 471, 478 (5th Cir. 2004) (citing *Rector v. Johnson*, 120 F.3d 551, 558-59 (5th Cir. 1997)). Thus, the Fifth Circuit has rejected a *Brady* claim related to potential witnesses where the defendant was aware of their existence, but not their names or contact information, when he never requested the information from the Government. *Lanford*, 838 F.2d at 1355; *see also Hernandez v. Terrones*, 397 F. App'x 954, 973 (5th Cir. 2010) (concluding that no *Brady* violation occurred with respect to individual whose "identity as a potential witness was, or should have been, known" to criminal defendant's attorney); *Sipe*, 388 F.3d at 487 (similar). Moreover, "evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682 (1985).

Here, the juveniles were not "suppressed" because their existence was known to the Defendants, and the Defendants did not subpoena them, request that the Government produce them, or make any effort whatsoever to call them as witnesses.

Furthermore, as discussed above, even assuming that the juveniles would have confirmed the Defendants' "credible fear" claims, that would not establish any valid defense to the criminal prosecutions. (*See* Part III.A, *supra*.) The Defendants' belated *Brady* claim is meritless.

### C. The Defendants' Rights Against Self-Incrimination Were Not Violated

The Defendants contend that the juveniles absence at trial compelled them to take the stand to establish their necessity defense, in violation of their right against self-incrimination. (Appeal ECF No. 11 at 13-15.) This argument also fails as the Defendants never attempted to call the juveniles as witnesses, never attempted to testify themselves, and did not assert a necessity defense below. Furthermore, as explained above, any such defense would have been meritless.

"[A] violation of the constitutional right against self-incrimination occurs only if one has been compelled to be a witness against himself in a criminal case." *Chavez v. Martinez*, 538 U.S. 760, 770 (2003). Thus, courts have held that to establish a violation of the right against self-incrimination, a party must "demonstrate the existence of three elements: 1) compulsion, 2) a testimonial communication, and 3) the incriminating nature of that communication." *Two Grand Jury Contemnors v. United States*, 826 F.2d 1166, 1168 (2d Cir. 1987). Additionally, a "finding of a constitutional violation would require assessment of resulting prejudice before any remedy may properly be determined," and the typical remedy in such circumstances

is suppression, not dismissal. *United States v. Fortna*, 796 F.2d 724, 732 (5th Cir. 1986).

Here, the Defendants' self-incrimination claim fails on all sides. The Defendants did not testify, do not claim that they made any communications subject to the privilege, have not shown that any such communications would be incriminating—indeed, they claim the opposite—and have not shown that dismissal is warranted based on any such violation. Nor could they show any prejudice given that their necessity defense is meritless. (*See* Part III.A, *supra*.) Moreover, the Government's research has not uncovered any cases where a *witness's* absence was found to result in a violation of the *defendant's* right against self-incrimination, let alone one where the defendant never testified. *Cf. United States v. Jaensch*, 552 F. App'x 206, 214 n.6 (4th Cir. 2013) (rejecting defendant's claim that exclusion of part of witness's testimony "forced him to testify in order to establish his good faith defense in violation of his Fifth Amendment right against self-incrimination").

"That the defendant faces . . . a dilemma demanding a choice between complete silence and presenting a defense has never been thought an invasion of the privilege against compelled self-incrimination." *United States v. Rylander*, 460 U.S. 752, 759 (1983) (quoting *Williams v. Fla.*, 399 U.S. 78, 84 (1970)). The Defendants' attempted expansion of the right against self-incrimination should be rejected.

## CONCLUSION

The judgments of the Magistrate Court should be affirmed.

Respectfully submitted,

JOHN F. BASH
UNITED STATES ATTORNEY

By: /s/_____
MALLORY J. RASMUSSEN
Assistant U.S. Attorney
Illinois Bar # 6306034
700 E. San Antonio, Suite 200
El Paso, Texas 79901
(915) 534-6884

## CERTIFICATE OF COMPLIANCE

### Certificate of Compliance With Type-Volume Limit, Typeface Requirements, and Type-Style Requirements

1. This document complies with the word limit of FED. R. APP. P. 32(a)(7)(B) because, excluding the parts of the document exempted by FED. R. APP. P. 32(f):

[X] this document contains 12,793 words, **or**

[ ] this brief uses a monospaced typeface and contains _____ lines of text.

2. This document complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and the type style requirements of FED. R. APP. P. 32(a)(6) because:

[X] this document has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in Times New Roman 14, **or**

[ ] this brief has been prepared in a monospaced typeface using ______________________ with _________________.

(s) /s/ Mallory J. Rasmussen

Attorney for the United States

Dated: April 5, 2018

## CERTIFICATE OF SERVICE

I hereby certify that on this, the 5th day of April, 2018, a true and correct

copy of the foregoing was provided to the attorney of record in this case:

Sergio Garcia
Assistant Federal Public Defender
Counsel for the Defendants


/s/_____
MALLORY J. RASMUSSEN
Assistant U.S. Attorney